GARLAND LEVEE DISTRICT v. HUTT.

4-7377                                    183 S. W. 2d 296

Opinion delivered October 23, 1944.

*Smith & Sanderson,* for appellant.

*Steel & Edwardes* and *T. B. Vance,* for appellee.

HOLT, J. The Garland Levee District of Miller county was created by Special Act 311 of the 1913 Acts of the General Assembly. It was reenacted so as to correct certain land descriptions by Act 56 of the Acts of 1917. The levee system parallels Red River from a point south of Garland City to a point approximately nine miles north of the Louisiana state line, being connected at its lower end with the levee of the McKinney Bayou Drainage District and its upper or north end with Miller Levee District No. 2. Pursuant to the authority granted,

the original levee in this district was built in 1917, along the west bank of the Red River, within the district, to protect the lands therein and to maintain the levee so as to secure the district from overflow.

In 1932, the Garland Levee District was placed in receivership, and Stuart Wilson was appointed receiver, which position he now holds. The present litigation was begun in 1943, at which time the bonded indebtedness of the district amounted to approximately $65,000.

Prior to the spring of 1943, it became apparent to the commissioners of the district and the receiver that the original levee was endangered by the encroachment of the Red River in two places. One of these danger points was between an old river lake, called Haley's Lake, and the present channel of Red River, where the river had cut to the very foundation of the levee. At the other danger point, up the river, known as Vickers' Point, the river had broken through the old levee for a distance of approximately 150 feet. It became apparent, therefore, that the old levee must be repaired or a new set-back levee constructed to protect the land within the district.

Upon application from the district, the Federal Government, under authority conferred by the Flood Control Act of Congress, 33 U.S.C.A., § 702a *et seq.* (Act of May 15, 1928, Chapter 569, etc., and amendments), granting aid to insolvent levee districts, agreed to furnish the entire cost of a proposed new or set-back levee, in accordance with plans submitted by government engineers at Vicksburg, Mississippi. The district accepted the government's proposal, and the levee, 12,805 feet long, 20 feet high and 16 feet wide at its top, was constructed at a cost of $32,000, all of which was paid by the government, as above indicated, without cost to the taxpayers. This set-back levee is built 7/10ths of a mile back from the original levee at the most distant point in the center and narrows toward each end where in joining the original levee it forms a "bottleneck loop" encircling the land. As constructed, the set-back levee leaves approximately 600 acres of land in a bottleneck or loop between the original levee and the new or set-back levee, and leaves

said lands exposed to the river's overflows, since it is left between the set-back levee and the river. In constructing this set-back levee, the district cut the old levee at Haley Lake point for a distance of approximately 300 feet and cut a drainage ditch through this opening about 12 feet wide and 3 feet deep, making entrance of flood waters at this point into the bottleneck loop about 7 feet lower than the break-through of the river higher up at Vickers' Point, and there is evidence that flood waters backed up into this bottleneck loop through this drainage ditch and covered appellees' lands to a depth of 6 to 8 feet before the waters came through the 150-foot break in the old levee at Vickers' Point and afforded a cushion to protect the new or set-back levee against the waters coming through at Vickers' Point.

Appellees, Lee Nall, L. D. Hutt and C. A. Nottingham, brought suit against the district for damages, (1) for their lands and improvements actually taken by the district for right-of-way on which the levee was built, and (2) for damages to their lands which they own and not used for right-of-way purposes, but which were left exposed between the set-back levee and the river and within the bottleneck or loop.

The jury awarded Nall $1,099.50, Hutt $1,245, and Nottingham $961.50, damages for lands taken for right-of-way purposes under their first contention, and awarded Nall $4,306.80, Hutt $735, and Nottingham $687.20, for damages under their second contention, for lands left exposed between the new levee and the river, outside of the right-of-way.

Appellees, J. D. Combs, J. M. Mills and the Valley Gin Co., were awarded damages by the jury, along with Nall, Hutt and Nottingham, for damages to their lands lying between the new levee and the river, although these lands were not taken for actual right-of-way purposes, Combs being awarded $1,720, Mills $3,800, and the Valley Gin Co. $5,000.

There is no controversy on this appeal as to the jury's award of damages to appellees, Nall, Hutt and

Nottingham, for their lands actually taken by the district for right-of-way purposes, under their first contention above; therefore, the jury's award to them in this connection is affirmed.

It is conceded that Nall owns 14.66 acres of land, included in the right-of-way, and 107.47 acres left between the old and the new levee; that Nottingham owns 12.82 acres included in the right-of-way, and 17.18 acres between the old and new levee; that Hutt owns 16.62 acres of land included in the right-of-way and 18.37 acres between the old and the new levee; that Combs owns 43 acres of land left between the old and new levee; that Mills owns 95 acres between the old and new levee; and that the Valley Gin Co. owns a cotton gin between the old and new levee on an acre tract leased from J. M. Mills. In short, it is appellees' contention that under said Government Flood Control Plan, *supra,* and the manner used in the construction of the set-back levee here there was a taking and damaging of their lands for which just compensation should be made. They also invoked the provision of Act 14 of the Second Extra Session of 1932. They allege combined damages to their lands in the amount of approximately $60,000.

The trial court, in substance, instructed the jury that appellees would be entitled to damages to their lands left exposed between the new levee and the river, if the evidence showed that the district and its receiver had erected the new levee an unreasonable distance from the old levee, thereby leaving more land exposed to the river's overflows than was necessary. This was not the proper rule as to liability of damages as we shall hereinafter point out.

Instructions No. 3 and No. 3A, given at the request of appellees, were inherently erroneous because they permitted the jury to consider and decide whether or not the new levee had been placed in a proper location. The determination of the location of the new levee was a matter within the discretion of the board of commissioners and the receiver of the district under the order of the Miller chancery court, and that discretion was not subject to the

control of the law courts in the absence of proof (and there was no such proof in the instant case) that the action of the board of commissioners of the levee district, in fixing the location of the new levee was arbitrary and capricious. 29 C. J. S. 886; *Patterson Orchard Company* v. *Southwest Arkansas Utilities Corporation,* 179 Ark. 1029, 18 S. W. 2d 1028, 65 A. L. R. 1446; *State Highway Commission* v. *Saline County,* 205 Ark. 860, 171 S. W. 2d 60. And even if it were alleged that the board of commissioners acted capriciously and arbitrarily in the matter, such action could not properly be made an issue in a proceeding to condemn right-of-way for the levee or a proceeding by landowners to recover damage by reason of the location of the levee. The sole remedy of the land- owners in such a case would be to apply to the chancery court in injunction proceedings for necessary and proper relief from the capricious and arbitrary action of the board of commissioners or the receiver of the district.

Nor can it be said that Act 14 of the second extra session of 1932 is applicable to the case at bar because, by the plain provisions of that act, it is limited in its application to cases where a written agreement had been made by the board of commissioners to compensate land- owners for damages resulting from the abandonment of the existing levee and the building of a set-back levee. No such agreement is alleged or proved in this case.

But the damage that may be awarded a landowner for the building of a levee is not necessarily limited to payment for land actually occupied by the levee. *Miller Levee District No. 2* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469. For example, it might become necessary to ac- quire an easement over lands some distance from the levee for use as a barrow pit to obtain the proper kind of dirt for the construction of the levee or it might become necessary to obtain an easement for a road over which dirt for the building and repair of the levee might be hauled. Any additional easement, use or servitude re- quired for the levee project and placed upon the land would amount to a damage or taking *pro tanto,* for which the landowner must, under the Constitution, (Art. 2,

§ 22, Constitution of Arkansas; Amendment 5, U. S. Constitution) be compensated. There was some evidence in this case that the lands of appellees lying between the new levee and the river were, under the plans of the new levee project as actually executed, to be used as a basin to receive flood waters in time of overflow from Red River, which flood waters would act as a cushion against the current of the overflow and thereby protect the new levee.

On a retrial of this case the jury should be instructed that, if they found from a preponderance of the evidence that under the plans for the new project as actually carried out the said lands of appellees were to be used as a means of affording protection in the manner above set forth to the new levee, then the landowners would be entitled to recover as damages for the imposition of this servitude or easement on their land the difference between the fair market value of their land before the new levee was built and the fair market value thereof after the construction of the new levee.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.