WATSON *v*. HARRIS.

4-8659 216 S. W. 2d 784

Opinion delivered January 10, 1949.

Rehearing denied February 7, 1949.

J. *Ford Smith, John D. Thweatt* and *Cooper Thweatt,* for appellant.

*Miles & Amsler,* for appellee.

ROBINS, J. Appellee instituted this suit in the lower court asking recovery against appellants in the sum of $12,000 for damage alleged to have been caused to her 120-acre farm by the building of a new ''set-back'' levee which the federal government constructed for White River Levee District of Woodruff, Prairie and Monroe counties, of which district appellants were directors. While the United States Government paid the actual construction cost of the new levee the district agreed with the government that it would pay the cost of the right-of-way and any other damages caused to landowners by reason of construction of the new levee.

In her original complaint appellee set forth that damage to her land was caused from obstruction of natural drainage by reason of the new levee being built across Jackson's Bayou, and also by the flooding of the roadway to her land, which rendered same inaccessible during certain periods of the year.

By an amendment to her complaint, she alleged that ''under the plans of the new levee project as actually carried out and executed and as the levee is now maintained the lands of the plaintiff lying between the new levee and the river are used as a basin to receive flood waters in times of overflow from White River which said flood waters together with surface waters impounded in said basin as set out in the original complaint herein, act as a cushion against the current of the overflow from White River and thereby afford protection to the new levee.''

Appellants in their answers denied all the material allegations in the complaint and amendment thereto, and alleged that after the floods of 1944 and 1945 it was decided to re-locate the levee at a point east of the old levee, thus leaving appellee's lands unprotected, between the new levee and the river, and that for any damage to appellee's lands from such re-location there was no liability against appellants or their district.

A trial jury awarded damages in the sum of $3,000 to appellee, and this appeal is prosecuted from judgment entered in accordance with the verdict.

The levee district was created by Act 97 of the General Assembly of Arkansas of 1911, and in 1912 the original levee was built a short distance (varying from one-half of a mile to a few hundred feet) east of the left or east bank of White River; and this first levee ran parallel to and approximately three-eighths of a mile west of the west line of appellee's property. From time to time crevasses developed in this levee during high water and it was finally determined that, since in this area there was high ground west of the river that served to contain flood waters, the levee on the old location did not allow sufficient flowage space and could not be successfully maintained. It was therefore decided to build the levee along the new route, about three-fourths of a mile east of the east line of appellee's land.

The lower court by instructions, given at the instance of appellants, eliminated from consideration by the jury damage alleged by appellee as a result of interference with drainage of her land, and also damage alleged by reason of overflowing of roadway to her land. The only element of damage which the lower court permitted the jury to consider was that growing out of the alleged use of appellee's land as a basin which held water in time of overflow and thus formed a "cushion" for the protection of the new levee.

As to this phase of the case the lower court gave this instruction:

Plaintiff's instruction No. 1: "Gentlemen of the Jury, if you find from a preponderance of the evidence in this case that under the plans for the new or setback levee and ditch constructed in connection therewith as actually carried out the lands of plaintiff or a portion thereof are being used as a means of affording a basin to receive flood waters from White River in time of overflow, and that the waters impounded in such basin would act as a cushion against the current of the overflow and thereby protect the new levee, the plaintiff is entitled to recover as damages for the imposition of this servitude or easement upon her land the difference between the fair market value of her land so used or damaged before the new levee and ditch were built and the fair market value of such land so used or damaged after the construction."

Appellant's chief ground for reversal is the asserted error of the lower court in giving this instruction. They argue that the instruction was erroneous because there was no proof of any plan or intention, on the part of officials of the district, to utilize appellee's land as a basin wherein accumulated waters would serve as a "cushion" to protect the new levee.

In the case of *Garland Levee District* v. *Hutt,* 207 Ark. 784, 183 S. W. 2d 296, we reversed judgments for damages against a levee district in favor of certain parties whose lands were, in the reconstruction of a levee, left between the new levee and the river. However, in that case we said: "But the damage that may be awarded a landowner for the building of a levee is not necessarily limited to payment for land actually occupied by the levee. *Miller Levee District No. 2* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469. For example, it might become necessary to acquire an easement over lands some distance from the levee for use as a borrow pit to obtain the proper kind of dirt for the construction of the levee or it might become necessary to obtain an easement for a road over which dirt for the building and repair of the levee might be hauled. Any additional easement, use, or servitude required for the levee project

and placed upon the land would amount to a damage or taking *pro tanto,* for which the landowner must, under the Constitution (Art. 2, § 22, Constitution of Arkansas; Amendment 5, U. S. Constitution), be compensated. There was some evidence in this case that the lands of appellees lying between the new levee and the river were, under the plans of the new levee projects as actually executed, to be used as a basin to receive flood waters in time of overflow from Red River, which flood waters would act as a cushion against the current of the overflow and thereby protect the new levee. On a retrial of this case the jury should be instructed that, if they found from a preponderance of the evidence that under the plans for the new project as actually carried out the said lands of appellees were to be used as a means of affording protection in the manner above set forth to the new levee, then the landowners would be entitled to recover as damages for the imposition of this servitude or easement on their land the difference between the fair market value of their land before the new levee was built and the fair market value thereof after the construction of the new levee.''

It is earnestly insisted by appellants that in the above citation we limited recovery of damages by a landowner for this use of his land as a basin whose waters would form a ''cushion'' protecting the levee to cases in which it might be shown that such use was planned or intended by those in charge of the project. But we do not think the language used by us in the Garland Levee District case, *supra,* is fairly susceptible of the meaning contended for by appellants. It is the actual taking, or damage, of lands for public use—rather than any plan or purpose to take or damage same—that, under the state and federal constitutions must be compensated. To impose upon a landowner, seeking compensation for the taking or damaging of his property for public use, the requirement, as a condition of obtaining such compensation, that he prove a purpose or intention, on the part of public officials, so to take or damage his lands, would obviously impair the constitutional protection against the taking or dam-

aging of private property for public use without just compensation.

There was substantial testimony to justify the giving of this instruction. Colonel John Buxton, who, as counsel for appellants frankly concede, "fully qualified himself as an expert Civil Engineer, gave an excellent record of education and training in that profession, showing 29 years of experience and practice, a large part of which was devoted to drainage and levee work," testified that he had made a survey of the area in which appellee's lands are located and had been in that vicinity, studying conditions eight times, at different water stages, in the twelve-month period before the trial.

After testifying in much detail as to elevations and other physical data Colonel Buxton said: "In my opinion the water coming in through the ditch and impounded there is going to operate as a cushion for the protection of the levee against the water that comes down from the north. . . . The levee as now constructed, will interfere with the natural drainage of this land. It has, in my opinion, destroyed the value of the land for agricultural purposes . . . Miss Frohlich's [plaintiff's] land would be used as a cushion until the water above would come and more or less neutralize itself in that area. . . . Plaintiff's lands would be used as a cushion only when there was a flood on White River and it would only serve as a basin when the river was higher than 173 feet [feet above sea level] at the break. . . . It is mighty nice to have something in the setback levee to protect it against the current."

In view of this testimony the lower court did not err in giving appellee's instruction No. 1, quoted above.

Appellants urge that the amount of the verdict is excessive. The proof showed that there were about 116 acres in cultivation on appellee's farm; that she had thereon three three-room dwelling houses and one four-room dwelling house, with the usual barns and outbuildings. Some of appellee's witnesses stated that the value

of her land before the new levee was constructed was $60 per acre, some placed this value at $75 per acre. After the new levee was constructed, according to some of these witnesses, the land was worthless; others thought it was worth from $10 to $15 per acre. There was some testimony tending to show other valuations; but the reconciling of the testimony of the various witnesses as to damage was a matter peculiarly within the province of the trial jury. There was abundant substantial testimony to sustain the amount of damages as fixed by the jury.

Other assignments of error urged by appellants have been examined and considered by us; and we do not find any reversible error shown therein.

The judgment of the lower court is affirmed.

GEORGE ROSE SMITH, J., dissenting. The situation here is similar in most respects to that in *Garland Levee Dist.* v. *Hutt,* cited by the majority. In both cases the construction of a setback levee created a basin between it and the old levee. In both instances a drainage ditch was dug which permitted rising flood waters to back into this basin and form a protective cushion for the new levee against waters later coming through the original break—of higher elevation than the ditch. We held that the use of plaintiff's land for such a cushion was a compensable servitude.

But in the *Hutt* case the levee and the ditch were constructed at the same time. We directed that the jury be instructed to ascertain whether the land was in fact being used as a cushion, and if so to measure damages by the difference in value of the land before and after the new levee was built.

This case is materially different. The setback levee was constructed in August, 1946, while the drainage ditch was cut a year later after experience had shown that flood waters were impounded in the basin. Drainage was the purpose of the ditch, although as in the *Hutt* case it is lower in elevation than the original break and will create a cushion of water when the river is rising.

The trial court, following the earlier decision too literally, permitted appellee's witnesses to testify as to comparative values before and after the setback levee was built. These witnesses admitted that their opinion was based largely on the fact that the new levee obstructed the natural drainage to the east, but it is conceded that the district is not liable on that account. *City Oil Works* v. *Helena Imp. Dist. No. 1,* 149 Ark. 285, 232 S. W. 28, 20 A. L. R. 296.

Hence the appellee's only basis for recovery is the cushion theory, but in this instance—unlike the *Hutt* case —there was in fact no cushion immediately after the new levee was constructed. Hence evidence as to reduced values on the earlier date was irrelevant and highly misleading to the jury. That it was prejudicial is shown by the fact that appellee's own witnesses placed a maximum value of $1,800 on the land immediately after construction. of the setback levee. But it was only when the ditch was dug a year later that a protective cushion might have been formed on appellee's land. Obviously a $3,000 verdict cannot be supported in the face of her own testimony that causes for which the district is not liable had already cut the value of her property to a maximum of $1,800. Consequently I think the judgment should be reversed with instructions to limit the evidence as to damages to comparative values before and after the digging of the ditch.

Mr. Justice HOLT joins in this dissent.