The Honorable Linda Chesterfield State Representative 12 Keo Drive Little Rock, AR 72206-4218
Dear Representative Chesterfield:
I am writing in response to your request for my opinion on a question arising from the following reported facts relating to actions of the Little Rock Municipal Airport Commission:
 There is property close to the airport that has been the subject of development plans over the course of at least the past year. Apparently, as the plans were drawing to a close and the sale of the property was near, the Little Rock Municipal Airport Commission made it known to the buyer and to the seller of the development property in question that it planned to acquire the property within the next five (5) to ten (10) years, either by purchase or by eminent domain if the commission could not obtain the property by an outright purchase. Therefore, the buyer backed out of the sale. This situation has occurred more than once according to some reports.
 Additionally, a homeowner within the property in question recently attempted to refinance his home with his mortgage company. The mortgage company turned down the refinance of the home because the commission claimed it would be acquiring the property within the next three (3) to five (5) years. *Page 2 
 It appears that the commission is either trying to assert a future claim of eminent domain to thwart a contract or at the very least, is interfering with a contract. The actions of the commission seem to be of dubious legality.
Against this backdrop, you have posed two questions I will paraphrase as follows:
 1. Does the Little Rock Municipal Airport Commission (the "Commission") have the legal authority to assert a future claim (within the next 3 to 10 years) of eminent domain on property near the airport?
 2. If not, will the Commission be subject to civil liability?
RESPONSE
Before generally addressing your questions, I must remark on the fact that you report having posed your questions on behalf of various private constituents who feel that the Airport Commission's statements about future plans to buy or condemn their properties might constitute an intentional interference with the constituents' contractual relations or business expectancies. I am neither authorized nor equipped to address the factual question of whether the Commission's actions may have involved any misconduct. I am further statutorily precluded from engaging in the private practice of law. A.C.A. § 25-16-701. However, I can and will set forth certain basic principles of law that I feel might apply if a court were asked to determine whether the conduct of the Little Rock Airport Commission has been in some sense improper. With respect to your first question, I have found no authority to suggest that the Commission is prohibited from announcing its intention to condemn property in the future. In my opinion, a reviewing court would reject any action for inverse condemnation arising from such an announcement unless the record reflected bad faith and an intent to cause injury on the part of the Commission. Your second question consequently appears to be moot. I will note, however, that members of the Commission enjoy limited immunity from tort liability pursuant to A.C.A. § 21-9-301. This immunity does not apply to intentional torts, and a plaintiff may recover damages for non-intentional torts to the extent of available insurance coverage. *Page 3 
Your question suggests that your constituents feel that the Commission may have infringed on their rights in several respects: first, by effecting a constructive condemnation of the property at issue by reducing its value to the current owners by threatening a future exercise of the Commission's power of eminent domain; and, secondly, by intentionally interfering with your constituents' contractual relations or business expectancy with respect to the property. As regards the concept of inverse condemnation, the Arkansas Supreme Court has offered the following summary in Robinson v. City of Ashdown, 301 Ark. 226, 230,783 S.W.2d 53 (1990):
 As originally conceived and developed, the concept of inverse condemnation was a remedy for physical taking of private property without following eminent domain procedures. "Fault" has nothing to do with eminent domain, and it is not bare trespass or negligence which results in inverse condemnation but something which amounts to a de facto or common law "taking." J. Sackman P. Rohan, Nichols on Eminent Domain, 8.1[4] (Rev. 3d ed. 1985, Supp. 1987). Inverse condemnation is thus a cause of action against a governmental defendant to recover the value of property which has been taken in fact by a governmental entity although not through eminent domain procedures.
As the court further observed:
 When a municipality acts in a manner which substantially diminishes the value of a landowner' land, and its actions are shown to be intentional, it cannot escape its constitutional obligation to compensate for a taking of property on the basis of its immunity from tort action.
Id. at 232; accord City of Fayetteville v. Stanberry, 305 Ark. 210, 215,807 S.W.2d 26 (1991).
Most directly on point with respect to your question is NationalBy-Products v. City of Little Rock, 323 Ark. 619, 916 S.W.2d 745 (1996), in which the Arkansas Supreme Court rejected a claim of inverse condemnation based upon an announcement by the Little Rock Regional Airport Commission (the "regional Commission") that it intended to condemn certain property in order to extend a *Page 4 
runway. In the course of rendering its opinion that the Regional Commission's action did not violate U.S. Const. amend. 5 or Ark. Const. art. 2, § 22, which prohibit a government's "taking" of property without just compensation, the court observed:
 At least one commentator has characterized the issue presented in this case as one involving "condemnation blight," which is defined as "the debilitating effect upon value of a threatened, imminent or potential condemnation." 4 J. Sackman, Nichols on Eminent Domain, § 12B.17[6] (Rev. 3d ed. 1995).
323 Ark. at 624-25. Citing Danforth v. United States, 308 U.S. 271
(1939), the court offered the following analysis:
 The United States Supreme Court held that, in the context of condemnation proceedings, a taking does not occur until compensation is determined and paid:
 A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a "taking" in the constitutional sense.
 482 U.S. 271 at 285. See also Agins v. City of Tiburon, 447 U.S. 255 (1980) (a municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, did not so burden landowners' enjoyment of their property as to constitute a taking).
323 Ark. at 625-26.
In rejecting the appellant's claim, the court in NationalBy-Products remarked:
 We followed the rationale of the Danforth decision in Hood v. Chadick, County Judge, 272 Ark. 444, 615 S.W.2d 357 (1981); see also 4 J. Sackman, Nichols on Eminent Domain § 12B.17[6] (Rev. 3d ed. 1995). In that case, Hood appealed from the trial court's *Page 5 
dismissal of his case against Jefferson County for damages he alleged were caused by the county's threat to take his property. Hood owned a building registered as a historical landmark located across the street from the Jefferson County Courthouse. After the courthouse burned in 1976, a commission was appointed to discuss plans for rebuilding. The commission's members considered plans to take Hood's property for parking and landscaping. The original plan, approved by the City Council in 1978, was withdrawn from a November 1978 election. A subsequent plan was developed and referred to the people in a July 1979 election. The plan was defeated. Subsequently, the county dismissed its condemnation suit against Hood, which had been filed in response to Hood's suit to enjoin the county judge from taking his property and for damages for loss of rentals. In affirming the trial court's dismissal of Hood's case, we observed that the county never took possession or even entered upon Hood's property and concluded that "[n]o damages are allowable for a mere `threat to condemn.'" Id. at 447; see also Watson v. Harris, 214 Ark. 349, 216 S.W.2d 784 (1949); Southwestern Water Co. v. Merritt, 224 Ark. 499, 275 S.W.2d 18 (1955) (holding that the actual taking or damage of lands for public use is what must be compensated under the state and federal constitutions, not a plan to take or damage the land).
323 Ark. at 626-27. Although the court observed that the result might have been different if the Commission had acted in bad faith in dealing with the landowner, it found no evidence of intent to cause injury.Id. at 627-28.
In my opinion, a court reviewing the facts giving rise to your question would apply the standard set forth in NationalBy-Products. As noted at the outset of this opinion, I am not a finder of fact and consequently cannot determine whether the Commission in this case acted in good faith or not. However, assuming no evidence of bad faith exists, I believe a reviewing court would reject any action alleging inverse condemnation.
With respect to your suggestion that the Commission may have tortiously interfered with your constituents' contractual relationships or business expectancies, I believe a reviewing court would apply the following standard, *Page 6 
which the Arkansas Supreme Court set forth in United Bilt Homes v.Sampson, 310 Ark. 47, 51, 832 S.W.2d 502 (1992):
 Underlying the tort is the premise that a person has a right to pursue valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party. Walt Bennett Ford, Inc. v. Pulaski County Special School District, 274 Ark. 208, 624 S.W.2d 426
(1981); Mason v. Funderburk,[ 247 Ark. 521, 521, 446 S.W.2d 543 (1969)], supra. The elements of tortious interference which must be proved are: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. W.E. Long Co. v. Holsum Baking Co., 307 Ark. 345, 820 S.W.2d 440 (1991); Mid-South Beverages, Inc. v. Forrest City Grocery Co., Inc., 300 Ark. 204, 778 S.W.2d 218 (1989).
As the recited elements of this tort suggest, any inquiry into a defendant's conduct will be intensely factual and, as such, is beyond my ability and authority to address.
Question 2: If not, will the Commission be subject to civilliability?
This question may well be moot in light of my conclusion that the Commission may announce its plans regarding future condemnations so long as it does not do so with the express intention of thereby causing injury to affected property owners. However, I will note that, as a general proposition, Commission members enjoy limited immunity pursuant to A.C.A. § 21-9-301 (Repl. 2004), which provides:
 (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for *Page 7 
damages except to the extent that they may be covered by liability insurance.
 (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
In Ark. Op. Att'y Gen. No. 1987-299, one of my predecessors opined that this limited immunity applies to members of an airport commission. I concur in this conclusion. However, as noted in my response to your previous question, Commission members may face liability for conduct that constitutes an intentional tort. I am neither situated nor authorized to opine whether any such misconduct occurred in this case.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely, DUSTIN McDANIEL Attorney General *Page 1