Eoff *v.* Kennefick-Hammond Company.

Opinion delivered July 23, 1906.

Taxation —situs of personal property.—Personal property of a non-resident which is being used in this State in the construction of the roadbed of a railroad company is subject to taxation.

Appeal from Boone Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*G. J. Crump* and *Garner Fraser,* for appellant.

1. The acts of assessors are presumed to be valid and correct until the contrary is shown. The burden is on the taxpayer to establish a charge of illegality. 25 Am. & Eng. Enc. Law, 236; 63 Ark. 592.

2. In this State all property except such as is specifically exempted by the Constitution is subject to taxation. 70 Ark. 554. And laws exempting property from taxation must be strictly construed. 25 Ark. 293; 65 Ark. 343. "All laws exempting property from taxation other than as provided in the Constitution" are void. Sec. 6, art. 16, Const.

3. The State has the power to tax any personal property found within its jurisdiction, without reference to the domicil of the owner, unless in fact the property is only temporarily within its borders; but the property of a construction company engaged in building a railroad within the State (such property consisting of electric light plants, boilers and machinery in opera-

tion, besides other property necessary to use in the construction of a railroad) can not be held to be only temporarily in the State. 156 U. S. 577; 141 U. S. 26; 50 S. W. 154; 57 Tex. 395; 35 Cal. 282; 166 U. S. 223; 46 Ark. 331.

*Pace & Pace,* for appellees.

If a nonresident brings or sends his personal property into this State temporarily, or for a temporary purpose, he does not thereby separate such personal property from his domicil; it acquires no legal situs in this State, and is not subject to taxation. 1 L. R. A. 237; 42 Ark. 77.

BATTLE, J. The assessor of Boone County listed and assessed for taxation for 1903 the following property of Kennefick-Hammond Company: 14 horses, 88 mules, 75 wagons, 17 boilers, 2 light plants, 2 air compressors, harness and blacksmith tools, valuing the boilers, light plants, air compressors, harness and blacksmith tools, in the aggregate, at $20,670. This property was situated in Boone County on the first Monday in June, 1903; how long before and how long after does not appear. It was used by Kennefick-Hammond Company in the construction of a roadbed for a railroad through a portion of Boone County, about fifteen miles in length. How long it required to complete the roadbed was not shown at the hearing of this cause. The taxes of 1903 were levied upon it, and the collector of Boone County was proceeding to collect the same when he was restrained from so doing by an order made by the chancellor of the Boone Chancery Court, upon application of Kennefick-Hammond Company, which was afterwards made perpetual by the court.

Kennefick-Hammond Company was a partnership composed of William Kennefick and F. S. Hammond, and they were citizens and residents of the State of Missouri before, on and after the first Monday in June, 1903.

In *Pullman's Palace Car Company* v. *Pennsylvania,* 141 U. S. 18, Mr. Justice Gray, speaking for the court, said: "No general principles of law are better settled, or more fundamental, than that the legislative power of every State extends to all property within its borders, and that only so far as the comity of that State allows can such property be affected by the law of any other

State. The old rule, expressed in the maxim *mobilia sequuntur personam,* by which personal property was regarded as subject to the law of the owner's domicil, grew up in the Middle Ages, when movable property consisted chiefly of gold and jewels, which could be easily carried by the owner from place to place, or secreted in spots known only to himself. In modern times, since the great increase in amount and variety of personal property not immediately connected with the person of the owner, that rule has yielded more and more to the *lex situs,* the law of the place where the property is kept and used. * * * For the purposes of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner; and may be taxed on its account, at the place where it is, although not the place of his own domicil, and even if he is not a citizen or resident of the State which imposes the tax."

The statutes of this State provide, that "all property, whether real or personal, in this State * * * shall be subject to taxation," except property exempted by the Constitution, of which the property in question is not a part. Personal property must be assessed in the name of the person who was the owner on the first Monday in June in the year in which the assessment was made. Kirby's Digest, § § 6873, 6913. And in all cases in which it is necessary for the assessor, "in consequence of the sickness or absence of the person whose duty it is to make out a statement of personal property" or his refusal to do so, "to ascertain the several items and the value thereof," the assessor may do so and make return thereof from the best information he can get. Kirby's Digest, § § 6966, 6968.

But plaintiffs insist that the property was in the State, at the time it was assessed, temporarily; that it had not been incorporated in and become a part of the property of the State; had not gained a *situs* here, but was *in transitu,* and not subject to taxation in this State. Tangible personal property of a nonresident in transit is not subject to local taxation in the State in which it may be temporarily. But when does property cease to be in transit and become of such permanency as will justify taxation in its new *situs?* It can not always be in transit.

In *Kelley* v. *Rhodes,* 39 L. R. A. 594, the "plaintiff, who was a resident and citizen of the State of Kansas, was the owner of

certain sheep, numbering about 10,000 head, which, on or about October 29, 1895, were in the county of Laramie, in the State of Wyoming, in charge of an agent, who was driving and transporting them through the State of Wyoming from Utah to Nebraska. In driving the sheep it was the practice to permit them to spread out at times in the neighborhood of a quarter of a mile, and while being so driven to graze over land of that width," and they were maintained solely in that way. They were driven across Wyoming for the purpose of shipment, and were not brought into the State for the purpose of being maintained permanently therein. The time consumed in driving the sheep through Wyoming was from six to eight weeks, and the distance traveled was about 500 miles. "For shipment purposes, it was not necessary that the sheep should be driven into Wyoming, and the railroad over which they were shipped could be reached from the point from which they were first driven by traveling a less distance than was required to drive them to any point" in Wyoming. The question was, were the sheep subject to taxation while in Wyoming? The Supreme Court of Wyoming held that they were. The court said: "We are of the opinion, therefore, that in determining the purpose and the *situs,* the course and method of travel is a proper subject, and one of the elements for consideration. We do not dispute the proposition that an owner of live stock, if not otherwise disobedient to the law, and observant of the police regulations of the State, has the right to transport them to market by driving on foot as well as by rail. Strictly speaking, they will be in transit by the one method as much as by the other. If, however, the purpose of such owner is not alone that of transportation, but comprehends also that of grazing and feeding them upon the natural grasses, which is their natural source of sustenance, not as a mere necessary incident of the travel, but as one of the purposes of such movement, they would not come within the rule which exempts personal property in transit from taxation."

This case, *Kelley* v. *Rhodes,* was taken to the Supreme Court of the United States, and the judgment therein was reversed on the ground that the sheep were property engaged in interstate commerce. *Kelley* v. *Rhodes,* 188 U. S. 1. The Supreme Court of the United States said: "The question to be determined, then, is. whether the stock of the plaintiff was brought into the State

*for the purpose of being grazed* at the time it was assessed for taxation.   *  *  *   Had the State court found directly the ultimate fact that these sheep were brought into the State for the purpose of being grazed, such finding might have bound us, but, under the facts actually found or agreed upon, we are at liberty to inquire whether they support the judgment.

"The law upon this subject, so far as it concerns interference with interstate commerce, is settled by several cases in this court, which hold that property actually in transit is exempt from local taxation, although, if it be stored for an indefinite time during such transit, at least for other than natural causes or lack of facilities for immediate transportation, it may be lawfully assessed by the local authorities."

Again it says: "The question turns upon the purpose for which the sheep were driven into the State. If for the purpose of being grazed, they are expressly within the first section of the act (that is subject to taxation in Wyoming). But if for the purpose of being driven through the State to a market, they would be exempt as a subject of interstate commerce, though they might incidentally have supported themselves in grazing while actually in transit."

After repeating a part of the facts, it says: "It thus appears that the only purpose found for which this herd of sheep was being driven across the State was for *shipment,* and the agreed statement (of facts) wholly fails to show that they were detained at any place within the State for the purpose of grazing or otherwise. As they consumed from six to eight weeks in traveling about 500 miles, or, as the Supreme Court found, at the rate of about nine miles per day, it does not even appear that they loitered unnecessarily on the way. As they required sustenance on the journey, and could obtain it only by grazing, it would appear, though there is no testimony upon that point, that they could hardly have been driven more rapidly without a loss of flesh during the transit."

The doctrine of the Wyoming court is not questioned by the Supreme Court of the United States, but the difference of the two courts is in its application to the facts in the case. As interpreted by the latter court, it is applicable, and should control in the case before us.

In *Fennell* v. *Pauley,* 112 Iowa, 94, the plaintiff was a resident of the State of Missouri in 1905-6. In December, 1905, he brought into Freemont County, in Iowa, 202 head of cattle for feeding purposes, and kept them upon land owned by him. In April, 1896, the cattle were taken back to the State of Missouri. The court said: "The contention is that this property, belonging to a non-resident and being only temporarily in this State, was not taxable here. Section 812, Code, 1873, provides that all personal property shall be taxed in the name of the owner on the first day of January. That property of this nature is taxable is fixed by sections 797-801; and section 817 requires personal property in the hands of an agent to be listed by the assessor. Section 823 requires the assessor to return all personal property found in his township. We understand that property in transit through the State can not be taxed here, nor can such as belongs to a non-resident, which is here only an incident of its transfer elsewhere. To give the right to assess the personal property of a nonresident found within this State, it must be located here with something like permanency, or for some purpose other than merely aiding its transit. * * * These cattle were here to be fed, in order to increase their weight and value for market. In principle, it was the same as the investment of money in this State, and we can not see why they should not be taxed here." To the same effect see *Waggoner* v. *Whaley,* 50 S. W. (Texas), 154; *Hardesty* v. *Fleming,* 57 Texas, 395.

*Grigsby Construction Company* v. *Freeman,* 58 L. R. A. 349, 108 La. 435, is a case like this. In Louisiana all property in that State is subject to taxation, except that expressly exempted from taxation by law. The statutes provide that in case the taxpayer fails or refuses to furnish a list of his property within the time prescribed, the assessor "shall himself fill out the list from the best information he can obtain." "In making his assessment for the year 1901 the assessor of the parish of Natchitoches called upon the plaintiff's agent to furnish, as required by law, a list of its property situated in the parish and subject to taxation. The plaintiff is a Texas corporation, having its domicil at Dallas, Texas. It operates in that State and adjoining States in the construction of dams, dikes, levees, railroad beds, and other earth work, and for that purpose has outfits, consisting of mules,

scrapers, wagons, commissary store goods, tents, etc., which it sends to the places where work is to be done. At the time when its agent was thus called upon by the assessor, plaintiff was doing grading work for the Texas & Pacific Railroad in the parish of Natchitoches, and the property sought to be assessed was a construction outfit and other movables necessary or convenient in the doing of that work. The agent questioned whether said property was liable to taxation in Louisiana, and asked for time to consult counsel. A second attempt was made to get from the agent a list of the property of plaintiff, and, this second attempt proving equally fruitless, the assessor, as required by law, made out a list of the property as best he could, and put the same on his roll. Plaintiff failing to pay the tax thus assessed, the tax collector proceeded to enforce payment by seizure of some of the mules assessed, and plaintiff brought suit, enjoining the seizure." Supreme Court of Louisiana held that the property was subject to taxation and said: "In the instant case the property was not in course of transportation, but was here for use likely to be of some duration—possibly a full year—and for the time being was incorporated in the bulk of the property of the State. It was distinguishable from the rest of the property of the taxing district in no respect except the intention of the owner to remove it at some future time more or less distant. Under these circumstances its *situs* approached nearer to permanency than did that of the sheep in the Wyoming case, or that of the coal in the *Brown* v. *Houston* case" (114 U. S. 633). 1 Wharton on Conflict of Laws (3 Ed.), § 80a, and cases cited.

The property of plaintiff in this case was not in transit, but was here chiefly, if not solely, for use and profit, and was subject to taxation.

Decree is reversed, and the complaint of appellees is dismissed for the want of equity.