FIRST STATE BANK, Beebe *v.* ARKANSAS STATE
BANKING BOARD

90-346                                                     806 S.W.2d 624

Supreme Court of Arkansas
Opinion delivered April 15, 1991

*Pope, Shamburger, Buffalo & Ross*, by: *Joseph L. Buffalo, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., *Thomas S. Gay*, Senior Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. In its Fourth Extraordinary Session of 1988, by Acts 2 and 4, the Arkansas General Assembly revised the law on establishing branch banking facilities. The old law prevented a bank from establishing a branch outside the county where its principal office was located except when taking over property previously used for banking by a bank that had been closed by the Bank Commissioner or Comptroller of the Currency. Ark. Code Ann. § 23-32-1201(b) (1987). The appellant, First State Bank, Beebe, contends the new law permits it to convert its current principal office located in White County to a branch and establish a new principal office in Pulaski County. Acting on the authority of an opinion of the Attorney General, the State Bank Board rejected the proposal, and the Circuit Court affirmed. We affirm the Circuit Court's decision that the new law does not permit the action proposed.

Codified as Ark. Code Ann. § 23-32-1203 (Supp. 1989), the

part of the new law relevant to this case is as follows:

(a)   No banking institution shall engage in the business of banking at any location other than at a principal banking office or branch bank in this state except as otherwise permitted by law.

(b)   Any bank may establish a full service branch and may establish, maintain, and use a customer-bank communication terminal, as that term is defined in § 23-32-1301, provided that its supervisory banking authority approves its application for the full service branch. Full service branches and customer-bank communication terminals may only be established as follows:

(1)   A bank may establish full service branches and customer-bank communication terminals anywhere within the county in which the establishing bank's principal banking office is located;

(2)   A bank which relocates its principal banking office may continue to use its former principal banking office location as a full service branch and customer-bank communication terminal so long as the use as a banking facility is uninterrupted;

(3)   In addition to the above subdivisions, after December 31, 1993, a bank may locate one (1) or more full service branches and customer-bank communication terminals anywhere within any counties contiguous to the county in which its principal banking office is located;

(4)   After December 31, 1998, a bank may locate one (1) or more full service branches and customer-bank communication terminals anywhere in this state.

The Bank's argument is based on subsection (b)(2) of the statute which contains no geographical limitation on relocating a principal bank office.

## 1. Literal meaning

■   The bank cites *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983), for its statement that we give language its plain meaning where it is plain and unambiguous. The language of § 23-32-1202 deals with the subject the codifiers have labeled, "Establishment of full service branch offices — Locations." The moving of a principal bank office and the

retention of the previous principal bank office as a branch constitutes establishment of a branch, and that is limited by subsection (b)(1) to "anywhere in the county in which the establishing bank's principal banking office is located." The Bank's proposal is to create a branch in White County while its principal office will be in Pulaski County. That is prohibited clearly by subsection (b)(1). We are unwilling to focus solely on subsection (b)(2) without reference to what goes before and after. We ascertain the intent of the General Assembly from the language of the whole act. *Cozad v. State*, 303 Ark. 137, 792 S.W.2d 345 (1990).

## 2. Legislative intent or purpose

■ If subsection (b)(2) were read to create an ambiguity or conflict in the Act by its failure to limit geographically the relocation of a principal banking office, only then would we seek to ascertain the intent of the General Assembly by using rules of statutory construction concerning matters outside the language of the Act. *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84 (1977); *Arkansas State Highway Comm'n v. Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958).

We need not do that here, for language used in the Act shows the General Assembly intended to allow banks to expand gradually by allowing establishment of branches in counties contiguous to those of their principal banks in 1994 and allowing branches statewide in 1999. By stating that after December 31, 1993, a branch could be established in a county contiguous to one in which the establishing bank's principal office was located the law clearly implied that such branches could not be established prior to that time.

If it were necessary to go beyond the language of the Act, we would need only to look to the language of its accompanying emergency clause which accompanies an Act to determine the General Assembly's intent. *Missouri Pac. RR Co. v. Kincannon*, 203 Ark. 76, 156 S.W.2d 70 (1941). The emergency clause provided, in relevant part, that the change in the law was necessary "to authorize county-wide branch banking and to provide for the orderly expansion of branch banking, after a period of time, outside the county, and to authorize statewide branch banking after a defined period of time. . . ."

No doubt the General Assembly did not intend to permit contiguous county branch banking prior to 1994.

Affirmed.