OMEGA TUBE & CONDUIT CORPORATION *v.* Ed
MAPLES, Pulaski County Tax Collector, and
B.A. McIntosh, Pulaski County Assessor

92-669                                              850 S.W.2d 317

Supreme Court of Arkansas
Opinion delivered April 5, 1993
[Supplemental Opinion on Denial of Rehearing May 17, 1993.*]

*Hays and Brown, JJ., would grant rehearing.

490

*Art Givens* and *Davidson, Horne & Hollingsworth*, by: *Cyril Hollingsworth, Michael O. Parker* and *Chet Roberts*, for appellant.

*Larry D. Vaught*, Pulaski County Att'y, for appellees.

DAVID NEWBERN, Justice. This tax case involves a dispute between the appellant, Omega Tube and Conduit Corporation (Omega), and the Pulaski County Assessor and Collector, appellees (the County). The question is whether raw materials used to produce products to be shipped outside this State attain a "situs" here and thus are subject to personal property taxation.

The Trial Court held that the controlling Statute, Ark. Code Ann. § 26-26-1102 (1987), is unambiguous and requires the tax to be levied. In response to Omega's request for a declaratory judgment as to the meaning of the Statute, we hold it is ambiguous and that the General Assembly did not intend to tax the raw materials in question; however, in response to Omega's request for refund, Omega may not recover taxes it has paid voluntarily. The Trial Court's decision is thus reversed and remanded.

Omega paid personal property taxes for 1986, 1987, and 1988 on raw materials imported for use in manufacturing goods to be shipped out of Arkansas. In 1989 Omega sought a refund from the Pulaski County Board of Equalization for $94,583.01, the taxes paid in those prior years. The Board denied the refund. Omega ultimately appealed unsuccessfully to the Circuit Court, seeking not only the refund but a declaration of the meaning of the Statute for its benefit and the benefit of other taxpayers similarly situated.

Omega contends the Trial Court erred by (1) holding § 26-26-1102 clear and unambiguous, (2) not considering all the subsections of the Statute, (3) holding contrary to public policy, and (4) concluding that Pulaski County is not estopped to apply § 26-26-1102 in this manner due to assurances given Omega when it located in Arkansas that the raw materials would not be taxed. As we reverse on the first point, we need not address the others.

In 1985, Omega Tube & Conduit built a manufacturing plant in Pulaski County. Omega receives steel coils from outside Arkansas from which it manufactures steel tubing, conduit, fence posts, automobile parts, and related goods. Over 90% of the finished products are then shipped outside the State. Dave Harrington, Director of the Arkansas Industrial Development Commission (AIDC), told Omega officials that Arkansas had a "freeport" statute, which exempts raw materials used in the production of finished goods sold outside Arkansas from *ad valorem* personal property taxes. Omega officials testified that assurance was a major consideration in its decision to locate in Arkansas.

Pulaski County assessed Omega's raw material inventory as personal property and collected *ad valorem* personal property

taxes on the raw material for 1986, 1987, and 1988. In 1989, Omega's Controller questioned the levy.

## 1. The statute

Omega questions the Trial Court's holding that § 26-26-1102 is not ambiguous. The Statute, enacted as Act 269 of 1969, is commonly referred to as the "freeport" or "no situs" law. It provides:

Place of assessment.

(a) All real estate and tangible personal property shall be assessed for taxation in the taxing district in which the property is located and kept for use.

(b)(1)(A) Tangible personal property in transit for a destination within this state shall be assessed only in the taxing district of its destination.

(B) Tangible personal property in transit through this state and tangible personal property manufactured, processed, or refined in this state and stored for shipment outside the state shall, for purposes of ad valorem taxation, acquire no situs in this state and shall not be assessed for taxation in this state.

(C) The owner of tangible personal property in transit through this state and of tangible personal property in transit for a destination within this state may be required, by the appropriate assessor, to submit documentary proof of the in-transit character and the destination of the property.

(2) "Tangible personal property in transit through this state" means, for the purpose of this section, tangible personal property:

(A) Which is moving in interstate commerce through or over the territory of this state; or

(B) Which is consigned to or stored in or on a warehouse, dock, or wharf, public or private, within this state for storage in transit to a destination outside this state, whether the destination is specified when transportation begins or afterward, except where the con-

signment or storage is for purposes other than those incidental to transportation of the property; or

(C) Which is manufactured, processed, or refined within this state and which is in transit and consigned to, or stored in or on, a warehouse, dock, or wharf, public or private, within this state for shipment to a destination outside this state.

The subsection at the center of this dispute is (b)(1)(B). Omega reads the subsection to mean that tangible personal property manufactured, processed, or refined in this State and stored for shipment outside Arkansas acquires no situs in Arkansas during the processing. The County and the Trial Court read the subsection to mean that only the final product being stored has no situs here but raw materials awaiting manufacture acquire an Arkansas situs.

## 2. Ambiguity

When the language of a statute is plain and unambiguous, we give the language its plain and ordinary meaning. *City of Fort Smith* v. *Tate*, 311 Ark. 405, 844 S.W.2d 356 (1992); *McGee* v. *Amorel Pub. Schools*, 309 Ark. 59, 827 S.W.2d 137 (1992); *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983). If a statute is clear and unambiguous, the primary concern is with what the document says and not what its drafters may have intended. *Mourot* v. *Arkansas Board of Dispensing Opticians*, 285 Ark. 128, 685 S.W.2d 502 (1985).

When a statute is ambiguous, however, effect must be given to the legislative intent. *McGee* v. *Amorel Pub. Schools, supra*; *Graham* v. *Forrest City Housing Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991). To determine the intent of the legislature we must look at the whole act. *First State Bank* v. *Arkansas State Banking Bd.*, 305 Ark. 220, 806 S.W.2d 624 (1991); *Cozad* v. *State*, 303 Ark. 137, 792 S.W.2d 606 (1990). As far as practicable, we must give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. *McGee* v. *Amorel Pub. Schools, supra*; *Shinn* v. *Heath*, 259 Ark. 577, 535 S.W.2d 57 (1976).

Marvin Russell, the Director of the State Assessment Coordination Division (ACD) from 1976 to 1988, interpreted

§ 26-26-1102 as exempting raw material that is received, manufactured, and shipped out-of-state. Larry Crane, the current Director of ACD testified that he interprets the Statute to mean the exemption only applies to the finished product awaiting shipment out and not to raw materials in storage awaiting manufacturing.

Steve Sutterfield, ACD supervisor of personal property research and development, testified he had conducted research with respect to the application of § 26-26-1102. He stated "there was a determination that there was not a consistent application of this statute and the different assessors read it different ways."

Two County Assessors testified as to their application of § 26-26-1102. Larry Fratesi, Jefferson County Assessor for 21 years testified he did not tax raw materials during the production phase when the finished product is destined for shipment out of Arkansas. He said a company in Jefferson County brings pipe in, galvanizes it, and then ships it outside the state. Fratesi testified that he does not tax the pipe brought in, during processing, or as a finished product. Jim Tompkins, Mississippi County Assessor, testified that during his 18 years as an assessor he did assess the raw materials and work in process; however, he did not tax the finished product to be shipped out of state. The Trial Court was thus presented with considerable evidence that the meaning of the Statute was not, at least to others charged with its interpretation, clear on its face. Thus it seems persons hired or elected to interpret and apply the Statute are not clear as to its meaning.

The Trial Court relied upon *Eoff* v. *Kennefick-Hammond Co.*, 80 Ark. 138 (1906), to hold that tangible personal property in transit attains a situs here for taxation when its trip is broken and the property is located in Arkansas for purposes other than those incidental to transportation. The issue in the *Eoff* case was whether property brought into Arkansas by a nonresident and used here to prepare a roadbed acquired a situs here for tax purposes. It did not involve a statutory exemption but turned on whether the State had the legislative authority to impose a tax.

The *Eoff* case is but one of many in which we have dealt with the power of the State to tax in the face of the Commerce Clause. In the latest of those cases, *Pledger* v. *Arkla, Inc.*, 309 Ark. 10, 827 S.W.2d 126 (1992), we discussed the Supreme Court's test

established in *Complete Auto Transit* v. *Brady*, 430 U.S. 274 (1977), which is much more detailed than the one we used in 1906.

If the issue here were whether Arkansas is constitutionally empowered to impose a tax on the raw materials, the later cases discussing the basic issue confronted in the *Eoff* decision might be significant, but that is not so. While one aspect of § 26-26-1102 asserts the State's power to tax within the confines of the Constitution, the aspect with which we are concerned here is that which has to do with exemption. Are the steel coils "moving in interstate commerce through or over the territory of this State" and thus within the definition of "in transit" provided in subsection (2)(a) of the Statute? Certainly the steel must stop long enough to be manufactured into a finished product, but does that keep it from being considered as "moving in interstate commerce?"

■ In interpreting a statute and determining the legislative intent, this Court looks to the language, subject matter, object to be accomplished, purpose to be served, remedy provided, legislative history, and other appropriate matters. *City of Fort Smith* v. *Tate, supra*. We must give effect to the intent of the General Assembly.

### 3. Administrative interpretation

■ It is also a familiar rule of statutory construction that the manner in which a law has been interpreted by executive and administrative officers is to be given consideration and will not be disregarded unless it is clearly wrong. *Morris* v. *Torch Club, Inc.*, 278 Ark. 285, 645 S.W.2d 938 (1983); *Walnut Grove Sch. Dist. No. 6* v. *County Bd. of Education*, 204 Ark. 354, 162 S.W.2d 64 (1942). An administrative interpretation is to be regarded as highly persuasive. *Bramley School Dist. No. 35* v. *Kight*, 206 Ark. 87, 173 S.W.2d 125 (1943). In *Walnut Grove Sch. Dist. No. 6* v. *County Bd. of Education, supra*, we quoted with approval from Crawford's Digest:

> As a general rule executive and administrative officers will be called upon to interpret certain statutes long before the courts may have an occasion to construe them. Inasmuch as the interpretation of statutes is a judicial function,

naturally the construction placed upon a statute by an executive or administrative official will not be binding upon the court. Yet where a certain contemporaneous construction has been placed upon an ambiguous statute by the executive or administrative officers, who are charged with executing the statute, and especially if such construction has been observed and acted upon for a long period of time, and generally or uniformly acquiesced in, it will not be disregarded by the courts, except for the most satisfactory, cogent or impelling reasons. In other words, the administrative construction generally should be clearly wrong before it is overturned. Such a construction, commonly referred to as practical construction, although not controlling, is nevertheless entitled to considerable weight. It is highly persuasive.

John O'Nale, the Director of ACD prior to Russell, wrote a letter to a Pennsylvania Company in 1974, in which he commented on § 26-26-1102:

Goods moving in interstate commerce may be assembled, bounded, joined, processed, dismantled, divided, cut, broke in bulk, relabeled, or repackaged, yet still be entitled to exemption from ad valorem taxation. There is no time limit on how long such goods may be stored.

The only requirement for exemption is the goods must be destined for out-of-state.

Mr. Russell, the ACD Director from 1976 to 1988, interpreted the Statute and instructed assessors around the state that raw materials being processed into a product which will be shipped out of the state do not attain a situs for personal property taxation purposes. Mr. Harrington, as Director of AIDC and in charge of "marketing" Arkansas to attract companies to locate in Arkansas, interpreted the Statute to mean raw materials will not be taxed so long as they are processed and shipped outside the state. AIDC has published informational brochures stating, in effect, this interpretation of § 26-26-1102.

The General Assembly enacted Act 269 obviously having in mind the purpose of making Arkansas competitive in attracting new manufacturing companies to locate in this State. The

Emergency Clause stated in relevant part:

> It is hereby determined by the General Assembly that prospective manufacturing and processing industries and commercial warehouses are confused as to ad valorem taxation of personal property in transit through Arkansas, and that because of this confusion the decision to locate industries therein may be adversely influenced to the extent that the State may lose valuable new industries. Therefore, an emergency is hereby declared to exist, . . . .

The Emergency Clause indicates the General Assembly wanted to clarify the status of *ad valorem* taxes on personal property in transit through Arkansas in a manner so as to encourage decisions to locate industries in this State. It is very doubtful to us that the General Assembly intended to entice manufacturers to Arkansas by exempting from taxation property destined for other states only when it achieved the manufactured form. We can think of no reason why material should be taxable by virtue of its presence here in one form but not in another when the purpose is to exempt things which will be sold or otherwise disposed of outside Arkansas.

We recognize, and have recited the evidence above, that various county officials have given various interpretations of the law in question. However, we recognize that the state officials given overarching responsibility for interpretation as heads of the ACD interpreted the law as exempting the raw materials from as early as 1974 until 1988. That long period of interpretation favoring the exemption at the state level is persuasive. It is clear that before 1988 the ACD was interpreting the Statute in accordance with its perceived purpose as did the AIDC.

Given the ambiguity of the Statute, our understanding of the intent of the General Assembly, and the interpretation and application given to § 26-26-1102 by officials, we hold § 26-26-1102 exempts from *ad valorem* taxation raw materials shipped to Arkansas for inclusion in tangible personal property manufactured, processed, or refined here for shipment outside the state.

### 4. Voluntarily paid taxes

Omega paid the 1986, 1987, and 1988 taxes voluntarily, and thus it is not entitled to have them refunded. *Rutherford*

v. *Barnes*, 312 Ark. 177, 847 S.W.2d 689 (1993); *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982); *cert. denied* 462 U.S. 1111 (1983); *Thompson* v. *Continental Southern Lines, Inc.*, 222 Ark. 108, 257 S.W.2d 375 (1953).

Reversed and remanded.

HAYS and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I cannot subscribe to the view of the majority that the dispositive statute — Ark. Code Ann. § 26-26-1102 (Repl. 1992) — is ambiguous. Accordingly, I would affirm the trial court. The pertinent sections of the statute are these:

> (B) Tangible personal property in transit through this state and tangible personal property manufactured, processed, or refined in this state *and* stored for shipment outside the state shall, for purposes of ad valorem taxation, acquire no situs in this state and shall not be assessed for taxation in this state.

> . . . .

> (2) "Tangible personal property in transit through this state" means, for the purpose of this section, tangible personal property:

> . . . .

> (C) Which is manufactured, processed, or refined within this state and which is in transit *and* consigned to, or stored in or on, a warehouse, dock, or wharf, public or private, within this state for shipment to a destination outside this state.

Ark. Code Ann. § 26-26-1102 (b)(1)(B), (b)(2)(C) (Repl. 1992). (Emphasis added.)

Only goods that are 1) manufactured for shipment in this state, *and* 2) stored for shipment out of state are exempt from assessment. Clearly, these criteria do not include raw material — coiled steel, in the case before us — which is shipped into this state for the purpose of eventual manufacture.

The reason raw material is not exempt is obvious. It may

never find its way into goods that are manufactured. Or if it does, the goods may not be shipped out of state but instead may be sold in Arkansas. Also, the raw material could be sold off for some other business venture and avoid the manufacturing process altogether.

That is why it makes eminent sense to exempt only raw material that has actually been manufactured and is actually stored, awaiting shipment out of state. That way Pulaski County is assured that the goods have not established a situs in Arkansas but are on their way out of state. Otherwise, the eventual fate of the steel coil in its unprocessed state is speculative at best.

What also militates in favor of the statute's clarity is the fact that Omega Tube followed it for two years — 1986 and 1987 — and did not contest assessment of its steel coil until 1988. Voluntary assessment is certainly some indication that the company did not believe its raw material was exempt. Yet in this appeal, Omega Tube contends that it came to Arkansas on assurances that its steel coil would be exempt from property taxes and was misled. If that is so, why did the company voluntarily pay the tax on raw material for two years after locating here?

Omega Tube argues that the practices of county assessors vary with regard to assessing raw materials. No doubt. But that does not translate into ambiguity. Nor does the testimony of individuals involved in promoting business development in Arkansas who may have intended a different result from that actually memorialized by statute. I go back to the words of the statute itself, and the words could not be clearer. The General Assembly is presumed to have intended what it states, and here it did so with clarity and precision. *See Roy* v. *Farmers & Merchants Ins. Co.*, 307 Ark. 213, 819 S.W.2d 2 (1991). There is nothing that remotely suggests that raw materials are exempt. Only after the material has been processed into product and awaits shipment out of state does it receive the favorable tax treatment. I would affirm the trial court.

HAYS, J., joins.

## SUPPLEMENTAL OPINION ON DENIAL
## OF REHEARING
## MAY 17, 1993

No response.

*Larry Vaught*, Pulaski County Att'y, for appellees.

PER CURIAM. Pulaski County argues our opinion is contrary to Ark. Const. art. 16, §§ 5 and 6. The County, again citing *Eoff* v. *Kennefick-Hammond Co.*, 80 Ark. 138 (1906), says we misused the terms "exempt" and "exemption" as only certain property listed in the Constitution may be "exempted" from taxation.

In the *Eoff* case, in addition to the Commerce Clause issue, we interpreted a statute now codified as Ark. Code Ann. § 26-3-201 (Repl. 1992) which, in relevant part, provides, "All property, whether real or personal, in this state; . . . shall be subject to taxation." We held property brought to Arkansas to use in construction of a railroad was not in transit but acquired a tax situs here. We did not have before us Act 269 of 1969 [Ark. Code Ann. § 26-26-1102 (Repl. 1992)].

It was not our intention to declare the property in question "exempt" in the constitutional sense; rather, according to § 26-26-1102, it does not attain a tax situs in Arkansas.

Rehearing denied.

HAYS and BROWN, JJ., would grant rehearing.