Frank DALEY v. CITY OF LITTLE ROCK and Tom Dalton
as Chairman of the Board of Trustees of the
Little Rock Fireman's Relief & Pension Fund
and the Members of that Board

94-216                                                892 S.W.2d 254

Supreme Court of Arkansas
Opinion delivered February 13, 1995
[Rehearing denied March 13, 1995.]

*R. David Lewis*, for appellant.

*Thomas M. Carpenter*, City Attorney and *Melinda S. Raley*, Deputy City Attorney, for appellees.

Tom Glaze, Justice. Appellant Frank Daley appeals the trial court's order denying disability benefits under the Firemen's

Relief and Pension Fund, because Daley had been terminated for cause and was not a member of the Fund when he applied for benefits. Daley argues his right to disability benefits vested at the time he was injured, not when he became permanently disabled or applied for benefits. In light of controlling statutory language at issue, we must affirm the trial court's decision.

The evidence shows that Daley had been employed as a fire fighter by Little Rock for fourteen years. On December 21, 1983 and January 24, 1984, Daley had separate on-the-job injuries. After being terminated for cause on September 1, 1987, Daley litigated or attempted to litigate the reasons for his termination in both federal and state courts. *See Daley* v. *Webb*, 885 F.2d 486 (8th Cir. 1989); *Daley* v. *City of Little Rock*, 36 Ark. App. 80, 818 S.W.2d 259 (1991).

Until his September 1, 1987 termination, Daley had been a member of the Little Rock Firemen's Relief and Pension Fund, which is administered by the Fund's Board of Trustees. From the time of his on-the-job injuries and through the time of his termination, Daley never applied for a disability pension. Instead, on March 10, 1988, he wrote to the Fund's Board, requesting the withdrawal of his prior contributions to the pension fund. On March 15, the Board responded by mailing Daley a check in the amount of $10,542.77. Daley did not cash this check, and subsequently destroyed it.

On March 22, 1988, Daley wrote two letters to the Board: one withdrawing his request for return of his contributions, and the other requesting a disability pension. On June 30, 1989, the Board notified Daley that he was not eligible for disability benefits. Daley did not appeal that decision.

Over three years later on August 19, 1992, Daley reapplied to the Board for a disability pension. On September 18, the Board again refused to consider Daley's application because Daley was no longer a member of the Fund. On October 6, Daley filed a complaint in circuit court seeking payment of benefits from the Fund. Based on the pleadings and supporting affidavits, the trial court granted the city's summary judgment motion, dismissed Daley's complaint, and ordered the Board to mail a cashier's check payable to Daley in the amount of his contributions. The trial court held that Ark. Code Ann. § 24-11-819(a)(1) (Repl.

1992) limits fire fighter disability pensions to members of the Fund, that Daley's termination for cause ended his membership in the Fund, and that Daley was not a member at the time he applied for benefits under the Fund. It is this order from which Daley brings this appeal.

For reversal, Daley contends there is no statutory provision which says that discharge either does or does not terminate an employee's right to a disability pension. He points out that only one statute addresses grounds for forfeiture of Fund benefits, and that statute limits the grounds to conviction of a felony, habitual drunkenness, and failure to report for an examination. *See* Ark. Code Ann. § 24-11-821(a) (Repl. 1992).[1] Daley points out he was not discharged for any of these reasons, and cites the doctrine of *expressio unius est exclusion alterius* (the expression of one thing is the exclusion of another). This argument is without merit, as we more fully discuss below. In further support of his quest for benefits, Daley also cites cases from other states. However, we generally find those cases inapposite because they involve pension laws employing different statutory language and prove unhelpful when construing our own Fund provisions.

Daley further claims that, because his right to a pension vested at the time he was injured, the time when he applied for benefits is irrelevant. Daley cites no Arkansas authority to support this argument.[2] Additionally, he claims the attempt by the Board to return his contribution was without effect because he never cashed the check. And finally, Daley argues the denial of benefits in 1988 was of no effect because there was no evidence at that time that he was either permanently or totally disabled, and any appeal would have been unsuccessful. Daley avers that evidence exists now.

While Daley offers numerous arguments as described above,

---

[1] The trial court stated in its December 1, 1993 judgment that Daley was discharged for "consistently poor work, a poor disciplinary record, and for an inability and unwillingness to interact positively with other fire department personnel." *See also Daley* v. *Webb*, 885 F.2d 486 (8th Cir. 1989).

[2] Daley does cite the case of *Bd. of Trustees* v. *Starasinich*, 128 Colo. 556, 264 P.2d 1033 (1954), but there, Colorado's pension statute provided coverage for policemen who have been "members in good standing . . . at the time of death or injury."

the issue of whether he is entitled to benefits under the Fund is purely statutory. *Hughes* v. *Firemen's Relief & Pension Fund,* 231 Ark. 877, 333 S.W.2d 716 (1960). The statutes governing the administration and disbursement of the Firemen's Relief and Pension Funds are found at Ark. Code Ann. §§ 24-11-801—830 (Repl. 1992 and Supp. 1993). This Fund's purpose is to pay fire fighters' retirement salaries and pensions, and pensions to the widows and minor children of deceased fire fighters and the widows and minor children of deceased retired fire fighters. § 24-11-812(a)(1). Further, a fire fighter may receive benefits under the Fund either pursuant to § 24-11-818 for voluntary retirement following twenty years of service, or pursuant to § 24-11-819 for retirement due to disability. Because Daley's right to voluntary retirement benefits had not vested, his only avenue for receiving benefits under the Fund must be based on disability. We now turn to those statutes governing receipt of benefits due to disability.

Section 24-11-816(a)(1) provides that in order to become a member of the Fund, an individual must be a fire fighter employed in the fire department of any city or town in this state and file a statement indicating a desire that the fireman and his or her beneficiaries participate in the Fund. The remainder of § 24-11-816(a) provides for either payroll deduction or payment by fire fighters directly into the fund, and for contribution by the municipalities or fire protection districts. Thus, the threshold condition for membership in the Fund is employment as a fire fighter, and it is uncontested that, at one time, Daley was a member of the Fund.

Section 24-11-816(b)(1) provides the following:

> In the event *a former member again becomes an employee of the same fire department where previously employed, the fire fighter shall again become a member of the system,* and the credited service *forfeited by him* shall be restored to his credit if he returns to the fund *the amount refunded to him* plus interest from the date of withdrawal to the date of repayment.

(Emphasis added). The foregoing subsection implies that membership is lost, or at the least, is abated by becoming unemployed as a fire fighter. And § 24-11-816(d)(2) provides in part as follows:

> In the event of *the resignation or discharge* from the fire department of *any member*, all moneys deducted from the salary of the person, or voluntarily paid by the person, shall immediately be returned to him without interest[.]

(Emphasis added). The language of § 24-11-816 is clear in raising the implication that resignation or discharge as a fire fighter terminates membership in the Fund.

Next, we turn to § 24-11-819 which provides for the retirement of "[a]ny *fire fighter* who becomes totally and permanently physically or mentally incapacitated for any suitable duty as an employee" and for the payment of benefits under the fund upon meeting specific conditions, for as long as the disability continues preventing return to active service. Additionally, the statute provides for suspension of benefits if the retirant refuses to comply with certain requirements. Under § 24-11-819, only a "fire fighter" is eligible for disability retirement with payment of benefits from the Fund. At the time of his re-application to the Board, Daley was not a fire fighter.

Our review of § 24-11-821 is also critical to our analysis of the Fund law and what affects or terminates benefits under that law. Subsection (a) of § 24-11-821 provides that once receipt of benefits begins, those benefits "shall immediately cease" to the individual receiving them when that person is convicted of any felony, becomes a habitual drunkard, or fails to report for medical examination as required. Because Daley never received any benefits under the Fund, § 24-11-821(a) does not apply to him. Consequently, Daley's argument based on *expressio unius est exclusion alterius* must fail.

The remaining provisions of § 24-11-821 are especially illustrative in considering whether Daley is entitled to benefits and provide in relevant part as follows:

> (b) In the event the chief *or any member of the fire department shall be removed or discharged without just cause*, the removal or discharge shall not in any way affect the right of the person to the benefits of this act. . . .

> (c) In the event it shall be determined on appeal that the removal was *without just cause*, then the person so

removed shall be reinstated by the board and shall be entitled to all the rights under the provisions of this act.

(Emphasis added). These subsections provide that upon removal or discharge of a fire fighter, benefits under the Fund shall continue through the appeal procedure until a finding of removal or discharge *without* just cause is made, and the fire fighter is reinstated. By the same token, these provisions suggest benefits will be discontinued if a determination had been made that the fire fighter had been discharged for cause.

Daley contends there was never any proper determination that he was discharged for cause. This argument is disingenuous because after Daley was discharged, he simply failed to timely complete an appeal or challenge of that decision. The doctrine of *res judicata* prevents Daley from now claiming a right to benefits. *See Ark. Dept. of Human Services* v. *Ark. Child Care Consultants, Inc.*, 318 Ark. 821, 889 S.W.2d 24 (1994). Of equal significance, the trial court held that the federal court determined in *Daley*, 885 F.2d 486, that Daley had been discharged for cause and our court of appeals has held that that federal decision is *res judicata* as to questions arising from the civil service commission's decisions in Daley's case. *Daley*, 36 Ark. App. 80, 84, 818 S.W.2d 259, 261.

Finally, we note Daley cites § 24-11-816(b)(3) which provides that "[a]ny employee who has become a member of the Arkansas Local Police and Fire Retirement System shall remain a member of that system." Statutes governing this system are found at §§ 24-10-101—616 (Repl. 1992 and Supp. 1993). Because there is no issue as to Daley's membership in that system present in this case, citation of this subsection is irrelevant.

This court has held that, when the language of a statute is plain and unambiguous, the language is given its plain and ordinary meaning. *Omega Tube & Conduit Corp.* v. *Maples*, 312 Ark. 489, 850 S.W.2d 317 (1993). Here, our careful review of the statutes governing the administration and disbursement of disability benefits under the Fund leads us to the holding that those statutory provisions require a fire fighter to be employed and to be a member of the Fund at the time he applies for benefits.

For the reasons discussed, affirmed.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Associate Justice, dissenting. Under the applicable statute, § 24-11-819(a)(1), eligibility for a disability pension vests at the time of the employee's injury and is not affected by his subsequent employment status at the time of his application for those benefits.

That statute provides:

> Any fire fighter who becomes totally and permanently physically or mentally incapacitated for any suitable duty as an employee, as a result of personal injury or disease may be retired by the board upon written application filed by or on behalf of the member. . . .

The majority has relied on rules of statutory construction to find the legislative intent. I find those rules of limited use with this act as they can support an interpretation either way,[1] and will consequently tell us little of the legislative intent. Therefore, it would be instructive to look at the underlying policies, and I

---

[1] For example, the application of the rule of construction that the express mention of one thing can be construed to mean the exclusion of another ("expressio unius est exclusio alterius") *Gazaway* v. *Greene County Equal.Bd.*, 314 Ark. 569, 864 S.W.2d 233 (1993), can lead to two different results depending on what the rule is applied to in this act. So, there are certain contingencies listed that allow a member to remain eligible for the fund, e.g. 24-11-816(b)(1), § 24-11-817, 24-11-820(e), § 24-11-827(b) but there are other sections that list certain contingencies where eligibility ceases e.g.: § 24-11-816(c), § 24-11-819(a)(5), 24-11-820(e), § 24-11-821(a).

In neither of those groups is appellant's contingency mentioned. Therefore, depending on which of these two groups the "expressio unius" rule is applied to, the result is different.

There is the same problem of elusiveness in the majority's use of rules of construction. It points to § 24-11-819 and the language, "*any fire fighter* who becomes [disabled] as a result of personal injury . . . may be retired by the board." The majority concludes from that language that because appellant was not a fire fighter at the time he filed for disability, he is not eligible. However, an equally strong argument can be made for the opposite result. It could be argued the legislature meant to include parties in appellant's situation because the term "any fire fighter" was chosen instead of the term "member" or "employee" as used in other provisions. The legislature used the term "any fire fighter" to distinguish that in cases of disability, the right to benefits vests at the time of the injury. If the legislature had intended otherwise, it would have simply used the language, "any employee" or "any member."

think there is guidance in this area from other jurisdictions.

While the majority dispenses with any consideration of these cases on the basis of differing statutory language, that distinction is not dispositive. While the statutory language is not identical to ours, the differences are not critical or even relevant to the decisions in those cases. What *is* significant in these cases are the underlying policies.

The majority of cases I found on this issue held the right to disability benefits vested at the time of the injury, and membership or employment was not required at the time of a subsequent application for benefits. See *Miller* v. *City of Wilmington*, 285 A.2d 443(1971 Del.); *Newlun* v. *Dept of Retirement Systems*, 770 P.2d 1071(1989 Wash) and *State* v. *Funkhauser*, 325 P.2d 297(1958 Wash). These cases looked at statutes very similar to ours and found that vesting of disability rights occurs at the time of the injury and not at the time of application for those benefits. The term "member" was used in relevant provisions, but the courts either found that term was not controlling, or simply ignored it. These cases relied instead on policy.

The considerations underlying eligibility in these situations are persuasive and are best stated in *Miller* v. *City of Wilmington:*

A primary purpose of the statute is to provide compensation to police officers for permanent disability which they receive in the course of their official duties. The right to a pension does not, therefore, depend on the applicant's status when applying, but rather, on fulfillment of the statutory requirements of eligibility. Since defendants concede that plaintiff was injured in the performance of his duties as a policeman and that his injuries have resulted in permanent, partial disability, plaintiff, absent a waiver of his rights was entitled upon application therefor, to receive a police disability pension.

Defendants contend however, that plaintiff has waived his right to a pension since he voluntarily resigned from the police force; they argue that any reservation of rights would have to be expressly made. *Defendant's argument fails to consider the liberal rules of construction established by the courts of this state in construing pension*

*statutes. Because of the remedial purpose of such statutes, because of the fact that they authorize pensions to prospective policemen as an inducement to their employment and because the pensions are financed by contributions from the proposed pensioners themselves, a forfeiture or waiver of pension rights should be found only where clearly intended by the parties.*

The foregoing is not only good policy, it is in keeping with our recognition of the liberal construction of pension statutes. See *Scott* v. *Greer*, 229 Ark. 1043, 320 S.W.2d 262 (1959); *Looper* v. *Gordon*, 201 Ark. 841, 147 S.W.2d 24 (1941). I would reverse.