The Honorable Sue Madison State Representative 573 Rock Cliff Road Fayetteville, Arkansas 72701
Dear Representative Madison:
This is in response to your request for an opinion on two questions concerning A.C.A. §§ 6-63-309 and 6-62-103, which statutes concern the salaries of employees of institutions of higher education. Specifically, you note that at each regular session of the Arkansas General Assembly, maximum salaries for all state employees for the upcoming biennium are set. You note that A.C.A. § 6-63-309 allows institutions of higher education to exceed those maximum salaries by no more than twenty-five percent (25%) for no more than ten percent (10%) of the positions authorized in the appropriation act. The other statute you mention, A.C.A. § 6-62-103, addresses the use of private funds by state-supported colleges and universities for salary payments that exceed the maximum levels. You note that originally, this act allowed these exceptions only for academic personnel holding an endowed chair. It was later amended to include exceptionally qualified nonacademic personnel paid wholly from non-public funds. Your questions regarding these two statutes are as follows:
 1. Does Ark. Code Ann. § 6-62-103 allow for salaries to exceed 125% of the line item maximum?
 2. If an employee receives a salary exceeding the 25% cap and is not the holder of an endowed chair or a visiting faculty member whose work is endowed, must their entire salary and salary related payments come from contributions from sources other than public funds as this statute seems to require?
It is my opinion that the answer to your first question is "yes." In my opinion the answer to your second question is "yes;" under the facts you recite and the statute you mention, such payments must come entirely from private funds, but this action may only occur in the circumstances described if the employee can be defined as "nonacademic" personnel. Otherwise, A.C.A. § 6-62-103 is inapplicable, and A.C.A. § 6-63-309, which applies to "academic" personnel, and contains the 125% cap, is the applicable statute.[1]
A recitation of the language of the applicable statutes is necessary to an understanding of the issues. Section 6-63-309 is the compilation of a number of Acts of Arkansas, the first of which was enacted in 1983. It now provides as follows:
 (a) In order that exceptionally well-qualified academic personnel may be recruited and retained, each state-supported institution of higher education may exceed the maximum salary levels by no more than twenty-five percent (25%) for no more than ten percent (10%) of the positions authorized in its biennial operation appropriation act as president, chancellor, academic dean, division head or chair, department chair, distinguished professor, university professor, professor, associate professor, assistant professor, instructor, extension specialist IV, extension specialist III, extension specialist II, extension specialist I, county extension agent-chairman II, or county extension agent-chairman I.
 (b) Within the ten percent (10%) limitation provided herein, the University of Arkansas for Medical Sciences may include no more than one (1) area health education center executive director, six (6) area health education center areas directors, six (6) family practice coordinators, six (6) association family practice coordinators, and six (6) assistant family practice coordinators.
As noted above, this statute was originally passed in 1983. It was amended in 1989 to add "distinguished professors" and "university professors" and to add a new section on academic deans and division and department chairs. See Act 402 of 1989. It was amended again in a later special session of 1989 to streamline the provisions regarding deans and chairs. See Acts 24 and 42 of 1989 (3rd Ex. Sess.). It was amended in 1991 to add the language regarding the "president" and "chancellor," (Act 1089 of 1991) and was amended again in 1995 to add the language concerning the UAMS employees. See Act 70 of 1995. This statute contains the 125% cap to which you refer, and contemplates the additional payments from public funds.
Section 6-62-103, the other statute you mention, involves salary supplementation from private funds. It was originally passed in 1985, and has been amended only once, in 1991. It provides as follows:
 (a)(1) Private contributors to state-supported colleges and universities frequently designate their gifts for the purpose of endowing academic chairs or attracting personnel with exceptional qualifications.
 (2) In order to appropriately compensate these individuals from private funds contributed for such purposes, special provisions for payments exceeding maximum authorized compensation levels are necessary.
 (b) The board of trustees of any state-supported college or university in Arkansas may authorize salary or salary-related payments to individuals from funds contributed for such purposes which exceed the maximum for positions established by state law subject to the limitations established in this section.
 (c) In order for the board of trustees of any state-supported college or university to authorize additional payments as established in subsection (b) of this section, the individual to receive the payments must be:
(1) Selected and recommended by the appropriate department;
 (2) Approved by appropriate administrative personnel and recommended by the president and the board of trustees;
 (3) The holder of an academic/research chair endowed wholly or in part by contributions from sources other than public funds, or exceptionally qualified nonacademic personnel paid wholly from contributions from sources other than public funds or a visiting academic/research faculty member for a specified period whose service is endowed or supported wholly or in part by contributions from sources other than public funds.
 (d) All funds paid to any individual above the maximum established by law as authorized in this section must come from private contributions or the proceeds from private contributions designated for such purposes.
 (e) No funds as authorized in this section shall be paid to any athletic personnel employed by a state-supported college or university in this state. [Emphasis added.]
The statute was amended in 1991 (Acts 1991 No. 822) to add the language about "exceptionally qualified nonacademic personnel paid wholly from [private funds]," and to exclude athletic personnel in (e).[2] This statute contains no particular "cap" and authorizes supplementation fromprivate, as opposed to public, funds. As you indicate, however, it applies only to three limited categories of personnel, and for "nonacademic" personnel, requires the salary to be paid "wholly from contributions from sources other than public funds."
I may now proceed to address your specific questions under these statutes. Your first question is whether A.C.A. § 6-62-103, just discussed above, "allow[s] for salaries to exceed 125% of the line item maximum." As noted above, A.C.A. § 6-62-103 is the statute relating to private salary supplementation or payments, and it contains no particular cap connected to line item maximums. Assuming, therefore, that a particular position is within this statute, and all of the provisions therein are complied with, there is no limit to the supplementation or salary levels that may take place. The answer to your first question is therefore "yes."
Your second question is whether, if an employee receives a salary exceeding the 25% cap and is not the holder of an endowed chair or a visiting faculty member whose work is endowed, their entire salary and salary related payments must come from contributions from sources other than public funds. It is my opinion that the answer to this question is "yes," assuming that the individual at issue can be classified as "nonacademic personnel."
I assume your question relates to an employee who does not fall within the two original categories of Act 335 of 1985 (i.e. the employee is not the holder of an academic/research chair endowed wholly or in part by contributions from sources other than public funds or a visiting academic/research faculty member for a specified period whose service is endowed or supported wholly or in part by contributions from sources other than public funds). Your second question addresses an employee who may fit into the language added to A.C.A. § 6-62-103 by the 1991 amendment ("exceptionally qualified nonacademic personnel paid wholly from contributions from sources other than public funds.") Your question is whether, if this is the only category in § 6-62-103 into which the employee fits, and the salary exceeds 125% of the line-item maximum (so that § 6-63-309 is not being used as authority) all of such employee's salary must be paid from private funds.
In my opinion, under the relevant statute, the answer to this question is "yes." The statute, A.C.A. § 6-62-103, grants the board of trustees authority to authorize salary payments exceeding the maximums "subject to the limitations established in [§ 6-62-103.]" The statute states that in order for the board to authorize the payments, "the individual to receive the payments must be" one of the three categories of personnel listed in A.C.A. § 6-62-103(c)(3). If the individual is not the holder of an academic/research chair, or a visiting academic/research faculty member, the only category under which private payments could be authorized is "exceptionally qualified nonacademic personnel paid wholly from contributions from sources other than public funds." In my opinion this language is unambiguous. Where the language of a statute is plain and unambiguous, the Arkansas Supreme Court determines the legislative intent from the ordinary meaning of the language used. Leathers v. Cotton,332 Ark. 49, 961 S.W.2d 49 (1998). A resort to the rules of statutory construction to determine what the drafters might have intended is not appropriate. See, e.g., Office of Child Support Enforcement v. Harnage,322 Ark. 461, 910 S.W.2d 207 (1995); Omega Tube and Conduit Corp. v.Maples, 312 Ark. 489, 850 S.W.2d 317 (1993); Townsend v. State,292 Ark. 157, 728 S.W.2d 516 (1987); and Mourot v. Arkansas Board ofDispensing Opticians, 285 Ark. 128, 685 S.W.2d 502
(1985).
As you have indicated, therefore, if "exceptionally qualified nonacademic personnel" is the relevant category, the individual must be paid entirely from private funds. The term "nonacademic personnel" is not defined in the statutory scheme.[3]
It is therefore my opinion, with the qualifications above, that the answer to each of your questions is "yes."
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/ECW:cyh
[1] You have not inquired, and I therefore do not address in detail the constitutionality of either statute under Arkansas Constitution, art.16, § 4 which provides that: "The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law." Cf. however, Gipson v. Ingram, 215 Ark. 812,223 S.W.2d 595 (1949) (stating that "[n]o injunction should prohibit the supplementation of salaries by the use of funds given for salary purposes by sources not controlled by the Legislature, such as private donations and federal grants"). This language from the 1949 Gipson decision, which might be fairly characterized as dicta, implies that there is noconstitutional objection, under art. 16, § 4, to the private supplementation of state salaries. The Gipson decision was of course rendered many years prior to the legislature's regulation of such private supplementation by the enactment of A.C.A. § 6-62-103.
[2] Neither of the two statutes discussed in this opinion addresses the compensation paid to athletic personnel. The compensation of such personnel may be governed by separate legislative enactments and is not addressed herein.
[3] The other statute about which you inquire (A.C.A. § 6-63-309), refers to "academic personnel," and contains an enumeration of particular classifications of employees, including presidents, chancellors, deans, chairs, and professors.