Timothy J. LEATHERS, Commissioner of Revenue for the State of Arkansas *v.* W.S. COMPTON CO., Inc.

93-774                                                    870 S.W.2d 710

Supreme Court of Arkansas
Opinion delivered February 14, 1994

*Karen W. Hathaway*, for appellant.

*Walter Skelton* and *Charles J. Buchan*, for appellees.

DAVID NEWBERN, Justice. The issue in this appeal is whether the Chancellor erred in enjoining the Commissioner of Revenue,

who is the appellant, from releasing information about the cigarette "stamp deputy allowance." Cigarette wholesalers place tax stamps on packages of cigarettes before they are sold to retailers. In return, they receive a commission, known as the "stamp deputy allowance," from the Revenue Department. The McLane Company, Inc., a wholesale company operating elsewhere, requested from the Commissioner figures showing how much commission had been paid to each wholesaler in Arkansas. All of the Arkansas companies in the wholesale cigarette business sought the injunction. They are the appellees. The Chancellor held that, because it would confer "advantage" upon a competitor, the release of the information was precluded by the applicable statute and thus to be enjoined. The decision is affirmed.

## 1. The statute

Arkansas Code Ann. § 26-18-303 (Supp. 1993) deals with the disclosure of tax information. It provides for nondisclosure of certain items of tax information but, in subsection (b)(11), exempts from nondisclosure commissions paid to taxpayers for stamp sales. In subsection (b)(11)(Q), however, the following appears:

> . . . . Provided, however, information which is subject to disclosure under the provisions of subdivision (b)(11) shall not be disclosed if such information would give advantage to competitors or bidders, or such information is exempt from disclosure under any other provision of law which exempts specified information from disclosure under any such law.

Subsection (g) then provides:

> (1) The director shall promulgate such regulations as are necessary to establish a reasonable procedure for making requests for and release of information under subdivision (b)(11) of this section, for allowing a taxpayer reasonable notice in advance of the release of the requested information, for a period of time up to seven (7) days from the date a request for information is made to provide notice and make necessary determinations, and to provide the methods by which the director shall determine if the information requested is subject to disclosure under Arkansas law.

(2) The provisions of the section shall solely govern the release of information under subdivision (b)(11) and the release of information shall not be subject to the Freedom of Information Act of 1967, § 25-19-101 et seq.

The Commissioner's brief analogizes to, and cites cases interpreting, the Freedom of Information Act. In view of the clear statutory provision that the Freedom of Information Act is inapplicable, the argument and citations are not apt.

Just as the Chancellor, we are relegated to deciding the meaning of that part of the language of § 26-18-303 which says, ". . . shall not be disclosed if such information would give advantage to competitors or bidders." We have not had any previous occasion to interpret that language.

When the language of a statute is plain and unambiguous, we give the language its plain and ordinary meaning. *Omega Tube & Conduit Corp.* v. *Maples*, 312 Ark. 489, 850 S.W.2d 317 (1993); *City of Fort Smith* v. *Tate*, 311 Ark. 405, 844 S.W.2d 356 (1992). If a statute is clear and unambiguous, the primary concern is with what the document says and not what its drafters may have intended. *Omega Tube & Conduit Corp.* v. *Maples, supra; Mourot* v. *Arkansas Bd. of Dispensing Opticians*, 285 Ark. 128, 685 S.W.2d 502 (1985).

The Commissioner has interpreted § 26-18-303(b)(11)(Q) in Revenue Regulation 1991-7, which is entitled "Disclosable Tax Information." It states that the information will not be released unless the taxpayer shows release of the information would result in "substantial harm to the taxpayer's competitive position."

If the language of a statute is ambiguous, the manner in which it has been interpreted by executive and administrative officers is to be given consideration and will not be disregarded unless it is clearly wrong. *Omega Tube & Conduit Corp.* v. *Maples, supra; Morris* v. *Torch Club, Inc.*, 278 Ark. 285, 645 S.W.2d 938 (1983); *Walnut Grove Sch. Dist. No. 6* v. *County Bd. of Education*, 204 Ark. 354, 162 S.W.2d 64 (1942). The language in § 26-18-303(b)(11)(Q), is, however, not ambiguous and thus must be given its plain and ordinary meaning as written. *Mourot* v. *Arkansas Bd. of Dispensing Opticians, supra.* If the General Assembly had meant to add to the simple language "would give

advantage to competitors," it could easily have done so. *See Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983).

■ We affirm the Chancellor's ruling that "advantage to competitors" means "any advantage" as it is simply not otherwise limited.

## 2. Competitive advantage

The Chancellor found that using the information in conjunction with other available information would give valuable information to a competitor. There was evidence before her that a competitor could use the information sought to gain an advantage enabling it to determine whether it would be worthwhile to target a particular wholesaler for competition. The Commissioner argues that release of the stamp deputy allowance information alone would not give a competitive advantage to McLane. We disagree and affirm the Chancellor's finding that release of the information would confer advantage on a competitor.

■ We review chancery cases *de novo* but will not reverse the findings of fact by the Chancellor unless they are clearly erroneous. *Brasel* v. *Brasel*, 313 Ark. 337, 854 S.W.2d 346 (1993). We give due regard to the superior position of the Chancellor to judge the credibility of the witnesses. Ark. R. Civ. P. 52(a); *Brasel* v. *Brasel, supra*. We consider the evidence in the light most favorable to the appellee. *Guaranty Nat'l Ins.* v. *Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). The burden is upon the appellant to show that the findings are erroneous. *Burson* v. *Day*, 284 Ark. 515, 683 S.W.2d 917 (1985).

■ Bob Douglas, an Arkansas wholesaler, testified that McLane is a large, strong company in the business of wholesaling cigarettes. The profit margin on cigarettes is small and thus dependent on volume. The stamp deputy allowance information could be used by McLane in conjunction with other reports to determine the market share of a wholesaler in a particular area. By a process of extrapolation McLane could learn the share of a wholesaler's gross profits attributable to cigarette sales. Having that information, McLane could know the extent of a wholesaler's business attributable to other items such as candy and thus know what it would take to undercut prices on those other items sufficiently to take away customers or run the wholesaler out of

business. Mr. Douglas's testimony was not refuted by any other witnesses, and we hold it sufficient to support the Chancellor's decision.

Affirmed.