Elizabeth Jan SCROGGIN; Carroll Scroggin, Jr.;
Henry Scroggin; Roy Scroggin; David Williams &
Sharon Lea Williams *v.*

CITY OF GRUBBS, Arkansas; Arkansas Industrial
Development Commission; & Arkansas Soil &
Water Conservation Commission

94-9                                   887 S.W.2d 283

Supreme Court of Arkansas
Opinion delivered November 14, 1994
[Rehearing denied December 19, 1994.]

*Hankins, Hicks, Madden & Adcock*, by: *Stuart W. Hankins*, for appellant.

*Boyce & Boyce*, by: *Edward Boyce*, for appellee.

TOM GLAZE, Justice. This case involves a claim of inverse condemnation. In 1989, appellee City of Grubbs, a municipal corporation and city of the second class located in Jackson County, began efforts to design and construct a flood control levee to protect the city from overflow due to the flooding of the Cache River. Grubbs entered into a grant agreement with appellee Arkansas Industrial Development Commission (AIDC) which initially provided $164,100 for construction. Additionally, appellee Arkansas Soil and Water Conservation Commission (ASWCC) committed to provide up to $70,000 for construction, which amount was later increased by $100,000.

The appellants, the Scroggins and the Williamses, are property owners within and outside the city's north and east boundary lines. The map below will aid the reader in understanding the facts of this case.

As can be seen from the map above, the Scroggins own three parcels of land totalling approximately 278 acres which are contiguous with each other. These parcels are worked as a single farm. The southwestern 40 acres are located within the corporate limits of Grubbs and are referred to as tract no. 2. Another tract, tract no. 1, totaling approximately 46 acres is located outside the corporate limits and lies adjacent to the eastern border of tract

no. 2. Scroggins' other 192 acres are referred to as the "remaining property" and lie immediately north of tracts no. 1 and 2. Appellants David and Sharon Williams, who rent and farm the Scroggins' land, own a single family dwelling on a one acre tract located in the southeastern corner of Scroggins' tract no. 1. In addition, the Williamses have a private road that extends from and is contiguous with Guffey Street. Guffey Street is a city street which ends at its intersection with Maple Street where the Williams private road begins and extends to the Williams residence.

On November 4, 1991, the Scroggins and Williamses filed suit in Pulaski County against Grubbs, AIDC and ASWCC, seeking to enjoin the funding and construction of the city's levee on their property.[1] Grubbs, AIDC and ASWCC filed motions to dismiss the suit, and the chancellor denied them on February 27, 1992. In her order, the chancellor also concluded that, as a matter of law, Grubbs was without statutory authority to condemn property outside its municipal borders. Based upon the chancellor's February 27 order, the Scroggins asked for a partial summary judgment which was granted on July 8, 1992. The chancellor's summary judgment stated the judgment is res judicata as to the issue of the power of Grubbs to condemn land outside its municipal borders for construction of a levee for flood control purposes. No appeal was taken from that judgment. As a result of the July 8 order, Grubbs is unable to condemn any part of the Scroggins' tract no. 1, therefore, the levee cannot be extended along the south side of that tract without the owners' consents.

Grubbs then purchased an easement south of and parallel to the Williams private road, so it could redesign the levee to lie in the easement and outside the Scroggins' tract no. 1. The remaining segment of the proposed levee runs along the south boundary of Scroggins' tract 2, but that property is within the city limits and subject to eminent domain. As shown on the map, the levee is to be positioned on the north side of Guffey Street where the street forms the southern border of tract no. 2, and on the south side of the Williams road, within Grubbs' easement located

---

[1]Although the land involved is located in Jackson County, the Scroggins and Williamses brought suit in Pulaski County because they sought to enjoin the two state agencies, AIDC and ASWCC, from providing funds for construction of the levee.

south of tract no. 1 and the Williamses' one acre. With this redesign of the proposed levee, Grubbs sought authorization and funding to proceed with the construction.

The Scroggins and the Williamses filed amended complaints that alleged, among other things, that the redesigned, proposed levee is located so their tracts and acreage are north and outside the levee, which would cause their lands to be a holding pond and flowage way area for flood waters diverted from the city. They further alleged the proposed levee would result in a taking by inverse condemnation in violation of the chancellor's earlier February 27, 1992 order and July 8, 1992 partial summary judgment. They also alleged the location of the levee in relation to the Scroggins' tract no. 2 was arbitrary and capricious, constituted an abuse of discretion, and unreasonably discriminated against the Scroggins.

Following trial on the merits on October 27, 1992, the chancellor dismissed the Scroggins and Williams complaint with prejudice.[2] In her order of dismissal filed on April 28, 1993, the chancellor held that the proposed levee to the south of Scroggins tracts no. 1 and 2 will not block a natural watercourse. The chancellor also held that the increased water elevation on the Scroggins' and Williamses' properties caused by the proposed levee would be *de minimis*, and that Grubbs had sufficient funds to compensate the Scroggins and Williamses for any damage to their property and to maintain the levee. She further concluded that Grubbs had wide discretion in the location and construction of a levee, and that the location chosen by Grubbs was not made arbitrarily or capriciously. The Scroggins and Williamses appeal from this order and its findings and conclusions.[3]

On appeal, chancery cases are reviewed *de novo* considering the evidence in a light most favorable to the appellee.

---

[2]We note that the Scroggins' statement of the case reflects that, on November 12, 1992, Grubbs instituted a separate eminent domain action in Jackson County Circuit Court against the Scroggins for the condemnation of an eighty-foot-wide strip of land along the southern boundary of tract no. 2 and on the north side of and parallel to the Williams' private road within Scroggins tract no. 1. The Jackson County Circuit Court case is not otherwise argued or put in issue here.

[3]As a part of her findings of fact and conclusions of law dated April 27, 1993, and filed on April 28, 1993, the chancellor dismissed this action with prejudice.

*Leathers* v. *W.S. Compton Co.*, 316 Ark. 10, 870 S.W.2d 710 (1994). This court will not reverse the chancellor's findings of fact unless they are clearly erroneous, and the burden is on the appellant to show that the findings are erroneous. *Id.* Here, the Scroggins and Williamses base their appeal on the following three points: (1) Grubbs acted outside its legal authority by advancing the construction of the proposed levee, (2) Grubbs violated the Scroggins' constitutional rights by placing tract no. 2, located within the city limits, outside the protection of the proposed levee, and (3) the construction of the levee will violate Ark. Code Ann. § 5-72-106(a) (Repl. 1993).

First, the Scroggins and Williamses argue the chancellor erred in holding that the levee as designed will not result in de facto takings of the Williams residence and private road, and the Scroggins' tract no. 1 and remaining property. They claim that such takings will occur by inverse condemnation because the proposed levee will cause flood waters to be deeper and remain longer over larger areas of their respective properties, will block a natural drainage way, and will impair their access to the only public road available to them — Guffey Street. The Scroggins and Williamses argue the question is whether the proposed levee con-stitutes a restriction or blockage of the flow of the Cache River. For support of their position that the levee would impermissively interfere with the watercourse of the Cache River, they point to a letter from Curtis James, Acting Field Supervisor of the U.S. Fish and Wildlife Service, wherein James stated that the levee "would constrict the width of the [one-year] floodplain to less than 1/8 of a mile."

The Scroggins and Williamses also point to the testimony of Robert Holloway, recognized by the court as an expert in the field of civil engineering and hydrology. Holloway testified that a natural drainage way[4] exists across tract no. 1 and the Williams road.[5] Holloway further testified that construction of the levee

---

[4] In cross-examination, Holloway recharacterized this natural drain as "a high water overflow course" and not a regular watercourse.

[5] Other testimony revealed that the appellants had placed a thirty inch drain pipe under the Williams road to facilitate the flow of water off of the Scroggins' land. The appellants claim the levee will block this drain, as well as prevent the flow of surface water and Cache River flood waters over the top of the Williams road.

as designed will block the natural drainage flow over the road, thereby reducing the floodplain of the Cache River by 75 to 80 percent (3000 feet wide to 600-700 feet wide). Holloway testified that such reduction or "squeezing" of the flow of the river by the levee, without a corresponding elevation of the riverbed upstream, would cause the river to expand beyond its normal flood plain both above and below the levee. Thus, Holloway opined the inevitable effect on the Scroggins' and Williamses' lands because of the levee would result in more of their land being inundated more frequently with higher water levels.

Finally, the Scroggins and Williamses point to the testimony of Robert Fooks, Jr., an engineer with the U.S. Soil Conservation Service. Fooks testified that flood waters from the river will be stored north of the levee and the flood water elevations will be increased due to construction of the levee. Additionally, Fooks testified that while surface water would flow northeasterly off of the Scroggins' and Williamses' property during periods of low water, there essentially would not be any flow during periods of high flood when their property is inundated. Because the Scroggins' and Williamses' lands are within the floodplain, the levee would restrict the flow during high flows and cause an increase in water surface elevation. Finally, Fooks testified that the Corps of Engineers had determined that because of the proposed levee, the increase in water level for the 10-year flood frequency would be 0.25 feet or three inches, and the increase for the 100-year flood frequency would be 0.6 feet or slightly over seven inches. But Fooks was unable to tell the chancellor how many feet of inundation would occur on the Scroggins' and Williamses' properties with and without the levee.

The Scroggins and Williamses rely on *National By-Products, Inc.* v. *U.S.*, 405 Fed.2d 1256 (Ct. Cl. 1969). There, the Air Force built a levee on the left side of Papillion Creek in order to protect its property from occasional floods. As a result of the government's action in building the levee on only one side of the creek, property located on the right side of the creek experienced two severe floodings in 1964 within two months of each other. The plaintiff, an owner of property on the creek's right side, brought suit against the government claiming that the government had taken a flowage easement across his property, and thus the government owed him just compensation. In rejecting National

By-Products' claim for compensation, the Court of Claims held that National By-Product's land had not been "taken" under the Fifth Amendment since National By-Products had failed to show that damage to its land rose above a temporary, incidental injury. The court stated as follows:

> The Government has been held liable where the construction of a dam or other obstruction in a stream results in either permanent flooding, or "a permanent liability to intermittent but inevitably recurring overflows." But the courts have held that one, two or three floodings by themselves do not constitute a taking. The plaintiff must establish that flooding will "inevitably recur[.]"

*Id.* at 1273 (citations omitted). Further, the claims court stated that the distinction between "permanent liability to intermittent but inevitably recurring overflows" and occasional floods did not have clear guidelines, since "the rule is really an application to this particular situation of the general principle that the Government is not liable under the Fifth Amendment for 'consequential damages' arising from the carrying on of its lawful activities." *Id.*

In finding that National By-Products failed to meet its burden of proof, the claims court pointed to the following four distinguishing circumstances of the case: (1) in the past, plaintiff was largely spared major flooding due to the breach of other older levees on the left side of the creek which relieved the pressure on the plaintiff's older levee on the right side of the creek; (2) the 1964 floods were severe by past standards and there was no proof that such rainfall causing the floods would "inevitably recur" in the future; (3) during the 1964 floods the downstream portion of the creek was unusually constricted with debris and silt which created greater pressure on the plaintiff's levee, but which condition was corrected after the floods; and (4) the flooding on the plaintiff's property was partially due to the weakness of its own older levee which was corrected by the building of a new levee on the right side of the creek.

Here, the Scroggins and Williamses argue that the evidence shows that Grubbs' proposed levee will cause "intermittent but inevitably recurring overflows" onto their properties. They fur-

ther argue it is immaterial whether the taking is caused by either restricting the width of the flood-plain or diverting surface waters by blocking drainage over and under Williams road.

Grubbs countered by arguing that it has the authority to construct flood control improvements for protection of the health and safety of its citizens, and for preservation of their property pursuant to legislative determination. *See* Ark. Code Ann. § 14-268-101 (1987). Under Ark. Code Ann. § 18-15-309 (Supp. 1993), Grubbs points out that the city is provided with the power of eminent domain necessary for the construction, operation, repair, or maintenance of flood control improvements including levees.

Grubbs also argues that, in order for there to be inverse condemnation of the Scroggins' and Williamses' properties, the Scroggins and Williamses must show deprivation of substantial possession or enjoyment of their properties caused by government action and without adequate compensation. Grubbs points out that Holloway disputed Fooks' testimony regarding the amount of increased flood depth that would be caused by the levee. Additionally, Grubbs emphasizes the evidence that the Scroggins' and Williamses' properties have always been subject to flooding, yet they have continued to use the land for farming. As a consequence, Grubbs argues the chancellor was correct in finding that the levee will have only minimal effect on the Scroggins' and Williamses' lands.

Grubbs further relies on *McCoy* v. *Board of Directors of Plum Bayou Levee Dist.*, 95 Ark. 345, 129 S.W. 1097 (1910) and *City Oil Works* v. *Helena Improvement Dist. No. 1*, 149 Ark. 285, 232 S.W. 28 (1921). Applying a modification of the common enemy doctrine[6], the court in *McCoy* held that the district had the right to construct a levee to prevent the escape of flood water from a river into surrounding lowlands even though such action resulted in the flooding of other land situated between the river and the levee, unless the injury could be avoided by reasonable effort and expense. The *McCoy* court held that the district was not liable for permanent damage to the plaintiff's land despite the

---

[6]The common enemy doctrine provides that waters of the sea or surface waters are a common enemy and may be warded off by artificial methods without incurring liability for damages to another.

constitutional requirement of just compensation under Ark. Const. art. 2 § 22.[7]

Citing *McCoy* with approval, the court in *City Oil Works* v. *Helena Imp. Dist. No. 1*, 149 Ark. 285, 232 S.W. 28 (1921), held that the distinguishing factor concerning whether the government becomes liable for damages from construction of a levee was whether the damage resulted from the levee itself, rather than from the decision to place the property within or without the protection of the levee. In *City Oil Works*, the district replaced an older, ineffective levee with one located so that a mill was left outside the protection of the levee. In holding that the district owed damages to the mill in a condemnation action, the court found that the determinative factor was that the damage to the mill was caused by the levee being built across a railroad line which was used by the mill to carry freight. Because the levee itself blocked the mill's railroad connection, the mill was rendered inoperable. The court reiterated the government's right to construct a levee for the general good without being liable for damages caused by the exclusion of certain lands from the levee's protection.

In the present case, additional evidence showed that Grubbs and the Scroggins' and Williamses' properties are located approximately one mile from the Cache River and within its floodplain, that the land is essentially flat except for a slight depression or swag in tract no. 1 and various man-made elevations including the Williams road, that flooding of the Scroggins' lands occurs frequently and usually during the winter months when no farming is done, that flooding has not interfered with the Scroggins' and Williamses' abilities to farm the lands, that flooding of the Williams road has not interfered with the ability to use it, and that a small levee prevents high water flooding of the Williams residence. Specifically, the chancellor found that no flow exists when a floodplain, such as the area surrounding Grubbs, becomes inundated. Based upon the evidence and her findings, the chancellor held that the *de minimis* increase in water elevation caused by the proposed levee, as reflected in Fooks' testimony, will not unnecessarily injure or damage the Scrog-

---

[7]Art. 2 § 22 provides in part that private property shall not be taken, appropriated or damaged for public use, without just compensation.

gins' and Williamses' lands. As a consequence, she concluded no taking had been shown.

In conclusion, the chancellor's finding that Grubbs has sufficient funds to redress any damage to the Scroggins and Williamses stands undisputed. Furthermore, the Scroggins and Williamses have failed to show that the levee itself would cause damage or that any damages they *might* experience could be avoided by a reasonable alternative. The chancellor found that Grubbs had considered two other alternatives and rejected each for valid reasons based in part because of costs and objections made by the Scroggins. Additionally, Grubbs rejected an alternative proposal by the U.S. Fish and Wildlife Service because of increased costs and potential damage to existing city facilities. Lastly, the Scroggins proposed an alternative through their agent Tommy Drew which Grubbs rejected because of increased costs and inclusion of additional wetlands which would have substantially lengthened the time for obtaining approval of, and in construction of, the proposed levee.

As this court has held and the chancellor so determined, Grubbs has wide discretion in making determinations with regard to the location of a levee and the mode of its construction. *Garland Levee Dist.* v. *Hutt*, 207 Ark. 784, 183 S.W.2d 296 (1944). Here, the Scroggins and Williamses have failed to show that Grubbs' decision in locating the proposed levee was arbitrary and capricious, that the chancellor's findings of fact were clearly erroneous or that the chancellor erred as a matter of law.

The Scroggins and Williamses raise two other points in this appeal, but we are unable to find where they obtained the chancellor's ruling on those points. It is well settled that the burden of obtaining a ruling on a particular theory of recovery is on the party who advanced the theory below, and matters left unresolved at trial are waived and may not be relied upon on appeal. *See Morgan* v. *Neuse*, 314 Ark. 4, 875 S.W.2d 826 (1993).

For the reasons discussed above, we affirm.