Terry ANGLE, et al. *v.* Jerry ALEXANDER, et al.

96-608                                    945 S.W.2d 933

Supreme Court of Arkansas
Opinion delivered June 2, 1997
[P etition for rehearing denied July 7, 1997.]

*Steven Napper* and *Robert McHenry*, for appellants.

*Wright, Lindsey & Jennings*, by: *John G. Lile*, for appellees.

*Davis, Cox & Wright, PLC*, by: *Paul H. Taylor*, for appellee Copes Furnitureland, Inc.

TOM GLAZE, Justice. Appellants represent (1) Concordia Care Center employees and (2) their family members who claim they were exposed to asbestos resulting from a 22,000 square-foot floor renovation project at the Center's facility at Bella Vista. The project commenced before Thanksgiving in November of 1990, and lasted until on or about December 18, 1990.

On June 24, 1991, the employees and nonemployee family members subsequently brought suit against appellees, Concordia, its administrator, Jerry Alexander, and the contractor, Cope's Fine Carpets, alleging causes of action of outrage, negligence, and fraud. In brief, appellants alleged that the appellees intentionally hid the truth concerning appellants' exposure to asbestos which was caused from the removal of old carpet and asbestos-backed vinyl required before installation of new carpet. Appellants asserted that, as a result of this exposure, they suffered physical injury, an increased risk of serious illness, and mental distress, anguish, fear and phobias of asbestos-related disease.

Although sometimes disputed, the facts leading to this litigation generally are as follows. In November 1990, Concordia Care Center, after bids were let, hired Cope's Fine Carpets to do a floor renovation at the Center's facility located in Bella Vista. Cope's employed a subcontractor, Mr. Dan Snowden, to remove the existing carpet and to lay new carpet. However, sometime after Snowden commenced work, it was learned that vinyl was under the old carpet, and the vinyl also had to be removed before placement of any new carpet. Shortly after removal of the vinyl began in November, Concordia's administrator, Jerry Alexander, allegedly voiced concern to the Center's maintenance man, Robert Greeley, that asbestos might possibly be in the vinyl.[1] While Alexander denied any knowledge of an asbestos problem early in the project, he admitted that, on about December 14, 1990, he learned that such a problem existed when an employee's spouse, Robert Hamilton, told him of it. Hamilton had taken a sample of the vinyl flooring, had it tested, and received a lab report verifying asbestos content was in the vinyl. Upon learning of Hamilton's report, Alexander informed Vernon Fredrickson of Cope's of the asbestos discovery, and Fredrickson contacted the manufacturer of the new vinyl. That company sent Cope's a "tip sheet" on removing the old vinyl. Cope's forwarded that information to Concordia and Snowden. Apparently the project had been temporarily stopped, but after receiving the information on asbestos

---

[1] While Greeley testified to this version, he signed an earlier affidavit that Alexander knew the tile had asbestos.

removal, Snowden resumed work on about December 15th or 16th, and continued until the project's completion on or about December 18th.

At trial, appellees moved for summary judgment. First, they asserted Concordia's employees were covered under the Arkansas Workers' Compensation Act, which barred any tort claims. Second, appellees claimed that both employees and the family-member nonemployees failed to state a cause of action for the tort of outrage or severe emotional distress, had no present compensable injuries, and had not shown entitlement to medical monitoring damages or damages resulting from the fear of increased risk of contracting asbestos-related disease.

The trial court granted appellees' requests for summary judgment, and appellants appeal that ruling, raising the following three points for reversal: (1) Appellant-employees argue their tort claims were not barred by the Workers' Compensation Act; (2) both employees and nonemployee family members had established that a material fact question existed showing appellees' conduct amounted to outrage; and (3) such conduct resulted in all of the appellants' injuries and justified their requests for medical monitoring damages and damages resulting from the fear of an increased risk of an asbestos-related disease.

We first consider the employees' argument that the Workers' Compensation Act does not bar their tort-of-outrage claim against appellees Concordia and its administrator, Alexander. In arguing the Act's inapplicability, they contend (a) appellees intentionally exposed them to asbestos fibers and appellees' conduct is outside the Workers' Compensation Act; and (b) the exposure and injuries the appellants/employees suffered were not inherent risks expected to arise from their employment and intended to be covered under the Act.[2] We disagree. In

---

[2] In sum, appellant/employees advances the theory on appeal, by citing *Gerber Products v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985), and *J. & G. Cabinets v. Hennington*, 269 Ark. 789, 600 S.W.2d 916 (1980), that before an employee's injury is covered under the Workers' Compensation Act, that injury must have resulted from some inherent risk a worker could have reasonably expected to arise in the course of his or her employment. On appeal, appellant/employees argue that, as nurses and support staff at a

doing so, we first note that we must summarily dispose of the employees' inherent risk theory because the abstract fails to reflect that that theory was presented to or ruled on by the trial court. *See Scroggins v. City of Grubbs*, 318 Ark. 648, 887 S.W.2d 283 (1994); *see also Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995).

However, appellants/employees are still left with their theory that the Workers' Compensation Act does not cover their injuries because appellees', Concordia's and Alexander's, conduct in this matter was intentional and therefore outside the Act's coverage. In this respect, appellants/employees point out that, while Ark. Code Ann. § 11-9-105(a) (Repl. 1993) establishes the exclusive remedy for work-related injuries under the Act, an employer's intentional infliction of any injury upon an employee is an exception to that exclusivity provision. *See Hill v. Patterson*, 313 Ark. 322, 855 S.W.2d 297 (1993). The *Hill* court held that, before an employee can escape the exclusivity statute, § 11-9-105(a), his or her complaint must allege a deliberate act by the employer with a desire to bring about the consequence of the act.

■ ■ The *Hill* decision cites the case of *Miller v. Ensco, Inc.*, 286 Ark. 458, 692 S.W.2d 615 (1985), which we find controlling here. There, the employee, Miller, was employed in the material division of Ensco's hazardous waste disposal facility. Miller claimed he sustained injuries from the exposure to polychlorinated biphenals (PCB's) as a result of the unsafe work conditions at the facility. In suing Ensco in tort, Miller alleged the company violated governmental safety regulations and collective bargaining agreements, failed to provide a safe workplace and to warn him of all its attendant dangers. This court in *Miller* held that these activities alleged by the employer, even when alleged to be flagrant, concealed, and deliberate, do not constitute an intentional tort for purposes of escaping the exclusivity provision of the Workers' Compensation Act. 286 Ark. at 461-62; *see also Griffin v. George's, Inc.*, 267 Ark. 91, 589 S.W.2d 24 (1979), and *Heskett v. Fisher Laundry & Cleaners, Inc.*, 217 Ark. 350, 230 S.W.2d 28

care facility, their exposure to asbestos was not an activity reasonably expected to be an incident of employment.

(1950). The *Miller* court held that, before an employee is free to bring a tort action for damages against an employer, the facts must show the employer had a "desire" to bring about the consequences of the acts or that the acts were premeditated with the specific intent to injure the employee. 286 Ark. at 461. The court further observed that intentional torts involve consequences which the actor believes are substantially certain to follow his actions. *See also* Prosser, *Torts*, (4th ed.) § 8. An example of the type of activity that would fall outside the exclusivity provision would be in the nature of an intentional act by an employer who assaults his employee. *See Heskett*, 217 Ark. 350, 230 S.W.2d 28. To further illustrate the type of conduct that has been determined to fall within the Workers' Compensation Act, the *Miller* court, citing *Griffin v. George's, Inc.*, quoted Larson's *Workmen's Compensation Law*, Vol. 2A, p. 13-18, § 68.13, as follows:

> Even if the alleged conduct goes beyond aggravated negligence and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injury that robs the injury of accidental character.

Thus, Concordia's and Alexander's conduct, even if intentional, still falls within the exclusivity provision of the Workers' Compensation Act.

Even though the Center's employees are limited to the rights and remedies granted them under the Workers' Compensation Act, we must decide the tort-of-outrage claims asserted by the nonemployee family members. These plaintiffs are ones who had picked up family members who worked at the Center, who on occasion had visited the facility, or who had been exposed to the clothes of a family member employed at the Center.

The nonemployees rely primarily on the case of *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), where the plaintiffs, parents of children who attended Westside Elementary School, and one employee of the school, filed suit against school employees, board members, and the school district, alleging those

defendants knew or should have known of the presence of friable asbestos in the school building and failed and refused to correct the condition, and to protect the students and staff from the dangers of exposure. The *Deitsch* plaintiffs further alleged (1) the school defendants knew of federal and state regulations concerning the removal of asbestos, misrepresented and concealed the dangerous asbestos condition in order to induce employees and students to attend school, and as a result, (2) the plaintiffs sustained damages for emotional distress and fear, physical injury, and increased risk of serious injury in the future.

■ While the trial court in *Deitsch* had dismissed the plaintiffs' complaint as failing to state a cause of action for the tort of outrage, this court disagreed on appeal. In doing so, the *Deitsch* court stated that to establish an outrage claim, it must be shown (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiffs' distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it. Although the *Deitsch* court declined to comment upon the merits of the pending action, it stated the following:

> Taking the facts alleged in the complaint as true, and in the light most favorable to the appellants (plaintiffs), we hold sufficient facts were at least alleged to state a cause of action for the tort of outrage.

■ Unlike *Deitsch*, the present case comes to us by way of summary judgment, not by motion to dismiss. Thus, our review here focuses not only on the pleadings, but also on affidavits and other documents filed by the parties. *Pyle v. Robertson*, 313 Ark. 692, 858 S.W.2d 662 (1993). And if a moving party supports its motion for summary judgment by making a prima facie showing of an absence of factual issues and entitlement to judgment as a matter of law, and the adverse party fails to set forth specific facts showing a genuine issue of material fact, then this court will not

say the trial judge erred in granting summary judgment. *Id.* at 694.

■   Here, although plaintiffs, including some nonemployees, offered their own testimony that they have experienced emotional distress, thoughts of death, fear, anger and worry, none of the plaintiffs have seen a physician or mental health professional for treatment for these concerns.[3] We believe Professors Prosser's and Keeton's treatise is helpful when analyzing an outrage claim where no physical illness or harm is evident. In addressing this issue, they said the following:

> [W]here physical harm is lacking the courts will properly tend to look for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious, but that if the enormity of the outrage itself carries conviction that there has in fact been severe and serious mental distress which is neither feigned nor trivial, bodily harm is not required.
>
> In the great majority of the cases allowing recovery the mental distress has been inflicted intentionally, the defendant either desiring to cause it or knowing that it was substantially certain to follow from the conduct. *Prosser and Keeton on Torts*, § 12, Fifth Ed. (1984). *Cf. Growth Properties I v. Cannon*, 282 Ark. 472, 669 S.W.2d 447 (1984); *M.B.M. Co. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980).

■   From our review of the record pertaining to the nonemployee plaintiffs, we can find nothing that shows the appellees' conduct caused the nonemployees the type of extreme emotional distress required to prevail on an outrage claim.[4] Although one of the plaintiff's medical experts indicated that the plaintiffs had incurred a physical injury as a result of inhaling asbestos from appellees' conduct, neither that expert, nor appellants' other physician, ever met, saw or examined any of the plaintiffs or reviewed plaintiffs' medical records concerning their physical or mental

---

[3] Some plaintiffs have seen a doctor for a base-line reading for future reference. One plaintiff, on the advice of her attorney, spoke to a psychologist, and another discussed the incident with her counselor while being treated for an unrelated problem.

[4] One doctor opined the mean excess cancer risk for the Center employees is 5.7 cases per 1,000 exposed. He said that nonemployees would be a magnitude lower, but he refused to quantify that risk.

state. Nor did the plaintiffs' experts obtain the plaintiffs' histories pertaining to any individual plaintiff's exposure to asbestos, the extent of exposure or health risks involved with such exposure. When considering appellees' conduct as related to whether they intended to cause nonemployees severe mental distress or knew it was substantially certain to follow appellees' conduct, we cannot, from the record provided, say either objective was met. Again, the nonemployees never showed their exposure or extent of exposure, much less that appellees intended or should have known nonemployees would experience mental distress from appellees' decision to complete the renovation of the Center's floor. Because appellants/nonemployees have failed to show appellees' conduct caused the type of severe emotional distress needed to establish an outrage claim, we affirm the trial court's ruling on this point as well.

In conclusion, we note appellants' third point, which touches on damages. However, we do not discuss this issue, in view of our holding that appellants have failed to show that a material question of fact exists to support their tort-of-outrage claim or underlying claim of liability against appellees. That being so, we affirm the trial court's decision because neither the plaintiff/employees or nonemployees have provided proof of an outrage claim.