Nigel MEREZ, Ormond Marshall, and
Houston General Insurance Company *v.*
SQUIRE COURT LIMITED PARTNERSHIP

02-1046                                          114 S.W.3d 184

Supreme Court of Arkansas
Opinion delivered May 15, 2003

[Petition for rehearing denied June 12, 2003.*]

---

* IMBER, J., would grant. CORBIN, J., not participating.

*The Brad Hendricks Law Firm,* by: *Lamar Porter* and *Janna Withers,* for appellants.

*Matthews, Sanders & Sayes,* by: *Doralee Chandler* and *Mel Sayer,* for appellee.

W H. "DUB" ARNOLD, Chief Justice. This case involves a negligence suit brought by Appellants Nigel Merez and Ormond Marshall against Appellee Squire Court Limited Partnership, for injuries they sustained while working for Carson Equities, LLC, renovating an apartment building owned by Squire Court. The Pulaski County Circuit Court granted summary judgment to Squire Court, and Appellants appealed to the Arkansas Court of Appeals. In an unpublished opinion, the court of appeals dismissed the appeal for lack of jurisdiction, holding that the exclusive, original jurisdiction of this case was in the Arkansas Workers' Compensation Commission. *See Merez v. Squire Court Ltd. Partnership,* CA 02-82 (Ark. App. October 2, 2002) (*Merez I*). The decision was based on the court of appeals' conclusion that Squire Court was the prime contractor on the renovation project.

Appellants subsequently filed a petition for rehearing, asserting that the Workers' Compensation Act did not apply in that Squire Court, as a prime contractor, was not liable for compensation benefits to Appellants, as they were employees of a subcontractor. Appellants relied on this court's holding in *Stapleton v. M.D. Limbaugh Constr. Co.,* 333 Ark. 381, 969 S.W.2d 648

(1998), wherein this court held that Ark. Code Ann. § 11-9-105(a) (Repl. 1996) was unconstitutional insofar as it granted tort immunity to a prime contractor who is not a statutory employer pursuant to Ark. Code Ann. § 11-9-402 (Repl. 1996).

Squire Court responded to the petition for rehearing by arguing that the court of appeals was correct in holding that under *VanWagoner v. Beverly Enters.*, 334 Ark. 12, 970 S.W.2d 810 (1998), the Commission has exclusive, original jurisdiction to determine the facts to decide whether the Act applies.

In a second unpublished opinion, the court of appeals vacated its previous decision and issued a substituted opinion reversing and remanding the order of summary judgment on the ground that there were material issues of fact yet to be determined. *See Merez v. Squire Court Ltd. Partnership*, CA 02-82 (Ark. App. December 18, 2002) (*Merez II*). Two judges dissented from that decision on the ground that the Commission has the exclusive authority to determine the facts bearing on the issue of where jurisdiction lies in this case. The dissent reasoned that Appellants' allegations, if true, raised the question of Squire Court's status as a possible joint venturer in the project with Carson, such that it would bring Squire Court within the Act's coverage.

█ Thereafter, Squire Court filed a petition for review in this court, which we granted on January 30, 2003. When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed in this court. *See Lewellyn v. Lewellyn*, 351 Ark. 346, 91 S.W.3d 63 (2002); *Sharp County Sheriff's Office v. Ozark Acres Imp. Dist.*, 349 Ark. 20, 75 S.W.3d 690 (2002). We conclude that the court of appeals made the right decision in the first appeal; we thus reverse and remand because the Commission has exclusive, original jurisdiction to determine the facts that establish jurisdiction in this case.

The record reflects that Appellants were employed by Carson Equities, LLC. Carson was hired in July 1997 to perform renovations on two apartment buildings owned by Squire Court. Squire Court is in the business of buying apartment complexes, having them renovated, and then leasing out the units. At the time, Squire Court and Carson were businesses run by father, Henry

Mann,[1] and son, Michael Mann, respectively. Squire Court's general partner was Squire Court Partners, Inc., of which Henry is president. Michael, along with his two sisters, was the owner and operator of Carson.

On May 28, 1998, Appellant Merez was carrying carpet up to the second floor of one of the apartment buildings when the stairway he was walking on collapsed. Appellant Marshall was walking on the ground level when the stairway collapsed and a large chunk of concrete landed on his foot. As a result of their injuries, Appellants sued Squire Court, alleging, among other things, that it was negligent in failing to warn Appellants of the danger presented by the stairs, in failing to reinforce the stairs, and in failing to exercise reasonable care for Appellants' safety. In addition, Appellants alleged that because of the control and supervision over the project exercised by Henry Mann, Squire Court was, in effect, the general contractor and therefore responsible for any negligence on the part of Carson. Appellants alleged further that the control exercised by Squire Court over Carson turned the relationship from one of employer and independent contractor to one of master and servant.

Appellant Houston General Insurance Company filed a motion to intervene in the lawsuit. In its complaint in intervention, Houston stated that it was the compensation carrier for Carson at the time of the accident, and that it had paid approximately $110,000 in compensation benefits to or on behalf of Appellant Marshall. The trial court granted Houston's motion to intervene.

Squire Court moved for summary judgment, contending that it did not owe any duty to Appellants because Carson was an independent contractor. Squire Court contended further that Appellants' remedy was a workers' compensation claim against Carson. The trial court granted summary judgment to Squire Court with no explanation. Appellants and Houston appealed the order of summary judgment.[2]

---

[1] In some of the pleadings, Henry Mann is also referred to as Hank Mann and Harry Mann.

[2] Houston did not file an appeal brief with this court.

The first issue we must determine is Squire Court's assertion that Appellants' remedy in this matter is a workers' compensation claim. This issue necessarily raises the threshold matter of jurisdiction to determine this issue. For the reasons set out below, we conclude that the Commission has jurisdiction to determine the facts that establish jurisdiction in this matter.

We recently addressed a similar issue in *Johnson v. Union Pacific R.R.*, 352 Ark. 534, 104 S.W.3d 745. There, the appellant was injured when a truck he was riding in was struck by a train. On the date of the accident, he was concurrently employed by two companies that were either owned or controlled by two brothers. The appellant received workers' compensation benefits from one of his employers. He later sued that employer for negligence. He contended that despite the fact that he had received workers' compensation benefits from that employer, he was actually performing work for the other employer at the time of the accident. The trial court granted summary judgment to the employer, finding that the appellant was working for the sued employer at the time of the accident and that the exclusive remedy for his injuries was under the Workers' Compensation Act.

On appeal, we reversed the order of summary judgment on the ground that the trial court lacked jurisdiction to determine which employer Johnson was working for at the time of the accident, and that the Workers' Compensation Commission had exclusive, original jurisdiction to determine the issue. We relied primarily on the decision of *VanWagoner*, 334 Ark. 12, 970 S.W.2d 810, for the following holding:

> *We hold* that the exclusive remedy of an employee or her representative on account of injury or death arising out of and in the course of her employment is a claim for compensation under § 11-9-105, and *that the commission has exclusive, original jurisdiction to determine the facts that establish jurisdiction, unless the facts are so one-sided that the issue is no longer one of fact but one of law, such as an intentional tort.* See *Angle v. Alexander*, 328 Ark. 714, 719, 945 S.W.2d 933 (1997) (citing *Miller v. Ensco, Inc.*, 286 Ark. 458, 461, 692 S.W.2d 615 (1985) (explaining that, before an employee is free to bring a tort action for damages against an employer, the facts must show that the employer had a "desire" to bring about the consequences of the acts, or that the acts were premeditated with the specific intent to injure the employee). In so holding,

we overrule all prior decisions to the extent that they are inconsistent with this opinion.

*Johnson,* 352 Ark. at 541, 104 S.W.3d at 748 (quoting *VanWagoner,* 334 Ark. 12, 15-16, 970 S.W.2d 810, 812) (emphasis added)). *See also WENCO Franchise Mngm't, Inc. v. Chamness,* 341 Ark. 86, 13 S.W.3d 903 (2000) (*per curiam*). Based on the holdings in *VanWagoner* and *Chamness,* we concluded that the Commission had the exclusive, original jurisdiction to determine whether the appellant's injuries were covered by the Act, because the facts were not so one-sided to demonstrate, as a matter of law, which employer he was working for at the time of the accident and, thus, whether the Act applied. This holding is controlling in the present case.

The issue here is whether Squire Court may be viewed as an employer of Appellants under the Act. In their brief, Appellants contend that Squire Court is liable for their injuries because it acted as the general contractor of the project undertaken by Carson. They assert that Squire Court exercised such a degree of control over the project that it turned the relationship from one of employer and independent contractor to one of *master and servant.* Appellants also alleged that there was an intimate relationship between Squire Court and Carson, such that the line between the two companies was impossible to distinguish.

The facts as contained in the abstract and addendum further support the Commission's jurisdiction to determine the jurisdiction of this matter. Henry Mann testified in his deposition that he was an officer of Squire Partners and that Squire Partners was the general partner of Squire Court. He stated that he and his son, Michael, ran Squire Partners and were primarily responsible for operating Squire Court. He stated that Carson acted as the general contractor for Squire Court's properties and that Appellants were employed by Carson, but not by Squire Court. He also stated that he was not a member of Carson and that he did not know the identity of any of Carson's partners. He stated further that he did not act on behalf of Carson, had nothing to do with Carson, and did not have any dealings with any employees of Carson. However, the answers to interrogatories filed by Squire Court indicate that Henry was a consultant for both Squire Court and Carson; that he provided advice on construction and manage-

ment of apartments; and that he had authority to write checks on behalf of both Carson and Squire Court. Finally, Henry admitted in his deposition that he periodically went to the job site and viewed the quality of the work. He explained that although Michael ran Carson, Michael, unlike Henry, did not know anything about construction.

In his deposition, Michael Mann was somewhat evasive as to the roles that he and his father played in the two companies. For example, he stated in his deposition that he did not know if he was an officer of Squire Partners or whether he was president of Carson at the time of the accident. In fact, he stated that he did not know what office he held or whether his father was an officer of Carson. He stated that he oversaw the daily operations of Carson, but that he did not receive any compensation from Carson for the renovations done on the Little Rock apartments. He stated that the day-to-day decisions, such as hiring and subcontracting, were his responsibility and that the job supervisors reported to him, not his father. He stated that he did not know if Carson kept personnel files on its employees, but that Squire Court was probably the custodian of any such records, if they existed.

Colvin Yearwood, a supervisory employee of Carson's for the jobs in question, stated that he was hired by Henry Mann. Yearwood believed that he worked for Squire Court and that Squire Court was a subsidiary of Carson. According to his deposition, Henry Mann was the owner of Carson. He was not sure what role Michael Mann actually played at Carson. He stated further that Henry was in charge of the renovations. He stated that he considered Henry to be his boss, and that he reported directly to Henry most of the time. He stated that Henry would walk around the property and inspect the premises during the work. In contrast, Michael did not ask for any reports of updates about the work, nor did he ever engage in conversation with Yearwood about the renovations. Finally, Yearwood stated that if it were necessary to hire subcontractors to perform work on the renovations at Squire Court II, the building where the accident occurred, it required Henry's approval.

Appellant Merez stated in his deposition that Henry came to the job site once a month, but that he did not tell Merez how to do his work. Rather, he stated that Colvin Yearwood or his

brother Matthew told him what work to do. He stated that he did not know whether he was employed by Carson, but that he was paid by checks drawn on Carson's account. Merez stated further that when he went back to work after the accident, he spoke with Henry Mann and Henry told him he could have his job back. Appellant Marshall stated in his deposition that he was employed by Carson and paid by Carson. However, he stated that sometimes Henry signed his paychecks.

Based on the foregoing facts and the allegations made by Appellants, we conclude that the Commission has the exclusive, original jurisdiction to determine whether Appellants' injuries are covered by the Act. The evidence is not so one-sided to demonstrate, as a matter or law, that the Act does not apply. Thus, it is an issue for the Commission to resolve. Accordingly, we reverse the trial court's grant of summary judgment to Squire Court, and we remand this matter to the trial court with leave for Appellants to pursue a determination before the Commission. Likewise, we reverse the substituted opinion of the court of appeals in *Merez II*.

Before we leave this issue, we take this opportunity to clarify that we do not hold that the trial court lacked *subject-matter* jurisdiction over this case, as the court of appeals concluded in *Merez I*. In *VanWagoner*, 334 Ark. 12, 970 S.W.2d 810, this court likened the issue to one of primary jurisdiction, explaining:

> We believe that the better rule is to recognize the administrative law rule of *primary jurisdiction* and to allow the Workers' Compensation Commission to decide whether an employee's injuries are covered by the Workers' Compensation Act. This rule is consistent with the purpose of the Act, and is supported by the teachings of Professor Larson:
>
>> The soundest result in these cases, both as a matter of law and as a matter of practical experience would be a *simple recognition of board priority* in all cases, except those in which the facts are so one-sided that the issue is no longer one of fact but one of law.

*Id*. at 15, 970 S.W.2d at 812 (emphasis added). Justice Imber, in her concurring opinion, succinctly observed that the issue is one of "jurisdiction to determine jurisdiction," as distinguished from "jurisdiction to hear the merits of the case." *Id*. at 17, 970

S.W.2d at 813. We believe that this observation best states our position on this matter.

■ Here, the trial court plainly had subject-matter jurisdiction over the suit filed by Appellants, which stated claims for negligence. What the trial court did not have jurisdiction over was the determination of the applicability of the Workers' Compensation Act, because the facts are not so one-sided to demonstrate that the Act does not apply as a matter of law. That jurisdiction belongs to the Commission.

Circuit court reversed and remanded; court of appeals reversed and remanded.

CORBIN, J., not participating.